THE COUNTY BOARD OF EDUCATION OF DUPLIN COUNTY AND J. R. WELLS, Treasurer, v. JAMES G. KENAN, Sheriff of Duplin County.

*Controversy Without Action—School Taxes, to whom payable—Constitutionality of Statute, who may not attack.*

1. Where a controversy without action is submitted for the sole purpose of obtaining the opinion of the Court upon a question, the effect of which might be to derange for a time the administration of the public school system, this Court will decline to entertain the controversy.

2. The school tax raised in a county under chapter 517, Laws of 1891 (amending section 2589 of *The Code*), is payable to the Board of Education of said county, and the Sheriff who has collected it cannot defeat a recovery thereof by such Board of Education by attacking the constitutionality of the statute and alleging that the fund is payable to some one else, when the fund is claimed only by such Board of Education.

3. It is not the province or right of a subordinate officer of the State government to assume an act of the General Assembly to be unconstitutional and to refuse to act under it, except only, if at all, in cases of plain and palpable violation of the Constitution, or where irreparable harm will follow the action.

CONTROVERSY submitted without action, heard before *Connor, J.,* at Spring Term, 1893, of DUPLIN Superior Court.

The facts and questions submitted were as follows:

"1. That the defendant, James G. Kenan, as Sheriff of said county, collected for the year 1891, and still has or ought to have in his hands unexpended $303 in excess of his commissions allowed by law for collecting the same, as taxes levied under chapter 517 of the Laws of 1891 of said State, amending section 2589 of *The Code* of North Carolina, to-wit: Fifteen cents on the $100 worth of taxable property and credits in said county, and forty-five cents on each taxable poll therein.

"2. That the plaintiff John R. Wells, Treasurer, has demanded for the plaintiff the County Board of Education of said county, the said sum of money of the defendant, but the defendant has refused, and still refuses, to pay the same, because he has been advised by the County Board of Commissioners of said county that the said sum belongs to the State School Fund and should be paid to the Public Treasurer and administered under the orders of the State Board of Education, and saith he is ready to pay the same to the plaintiff or to the said Public Treasurer, as the Court may determine.

"Wherefore the said parties submit to the Court, as a controversy without action, whether upon these facts the defendant Kenan, Sheriff as aforesaid, should pay the said sum of money to the Public Treasurer or to the plaintiff John R. Wells, Treasurer."

His Honor adjudged that the defendant should pay the amount in his hands to the plaintiff, and defendant appealed.

*Messrs. Allen & Dortch, Busbee & Busbee* and *Aycock & Daniels,* for plaintiff.

*Messrs. Battle & Mordecai* and *A. D. Ward,* for defendant (appellant).

MACRAE, J.: This controversy without action, between certain officers of the county of Duplin, is raised for the purpose of invoking the exercise of what is called in *Hoke v. Henderson*, 4 Dev., 1, "the gravest duty of a Judge," a decision upon the constitutionality of an act of the General Assembly.

It is well understood that this duty which sometimes devolves upon the Courts, not by reason of any superiority in the judicial to the legislative department of the State, but of necessity, when the powers of the people in their Constitution and those reposed in their Legislature are brought in conflict, is to be exercised only as the last resort and when forced upon the Court.

The Board of Education claims the fund in the Sheriff's hands arising from the collection of school tax; there is no other claimant of this fund; the law, section 2563 of *The Code*, expressly requires the Sheriff to pay it over to the Board of Education of the county, under heavy penalties for a failure so to do. These are the words of the statute:

"And on failure so to do (the Sheriff) shall be guilty of a misdemeanor, and fined not less than two hunded dollars and be liable to an action on his official bond for his default in such sum as will fully cover such default, said action to be brought to the next ensuing term of the Superior Court, and upon relation of the County Board of Educa tion for and in behalf of the State."

It will be seen that the mode of procedure in case of failure of the Sheriff to pay over the fund as required is prescribed in the statute.

The Sheriff, however, at the suggestion of the County Commissioners, doubts the constitutionality of the act aforesaid, and is advised that "the State School Fund" should be paid to the Public Treasurer, and therefore refuses to pay it according to the direction of the act.

If the Public Treasurer were demanding payment of the Sheriff it might be that the advice of the Court could be required and the question presented in such manner that the Court would feel bound to advise the Sheriff in a proper proceeding, all parties interested being before it, as to the disposition of the fund.

But in this case, where there is no controversy between claimants of money in the Sheriff's hands, and the proceeding is instituted, as it evidently is, for the sole purpose of obtaining the opinion of the Court upon a most important question, the effect of which opinion, if given in favor of the contention of the Sheriff, might be to disorder for the time being the whole administration of the common school system of the State, we cannot hesitate to decline to entertain the controversy.

We may refer to what was recently said by the Court in the case of *Gilmer* v. *Holton,* 98 N. C., 26, where the Clerk of the Superior Court refused to administer the oath of office to a Justice of the Peace appointed by the Governor under the act of Assembly, because in the opinion of the Clerk the act was unconstitutional: "It is a proper occasion for us to remark that if every subordinate officer in the machinery of the State government is to assume an act of the Legislature to be in violation of the Constitution and refuse to act under it, it might greatly obstruct its operation and lead to most mischievous consequences. This is only permissible, if at all, in cases of plain and palpable violation of the Constitution, or where irreparable harm will follow the action."

Judgment Affirmed.