## GREEN *v.* WILLIAMS.

## (*Nashville.* February 8, 1893.)

1. MECHANICS' LIEN. *Estoppel of contractor.*

   A contractor is estopped to assert his mechanics' lien against the purchaser of the incumbered property, who was induced to purchase and pay for the property upon the contractor's representation that no such lien existed against it.

2. SAME. *Same. Subcontractors' and furnishers' liens independent of contractors.*

   But such estoppel of the contractor is not operative against the rights or liens of subcontractors and material-men, who have, under contract with him, performed labor or furnished materials for the improvement of the incumbered property. Their liens for labor done and materials furnished are entirely independent of the contractor's lien, and not subject, to any extent, to his power or control.

3. SAME. *Purchaser's liability.*

   A purchaser who becomes owner of the property during the progress of work thereon that fixes subcontractors' and furnishers' liens upon it, takes the property subject to liens for the full amounts due to such subcontractors and material-men upon completion of their contracts, although he had not actual notice of such claims, and there had not then been effected the registration and notice required by Acts 1889, Chapter 103; provided said liens are subsequently, and within the time allowed by said Act, perfected by notice and registration as therein prescribed.

   Act construed: Act 1889, Ch. 103.

   Cases cited and approved: Manufacturing Co. *v.* Falls, 90 Tenn., 471 ; Reeves *v.* Henderson, 90 Tenn., 521; Shelby *v.* Hicks, 5 Sneed, 197 ; Weller *v.* McNabb, 4 Sneed, 422.

---

FROM WILLIAMSON.

---

Appeal from Circuit Court of Williamson County. H. H. COOK, Sp. J.

H. P. FOWLKES and S. S. HOUSE for Green.

JOHN H. HENDERSON for Williams.

LURTON, C. J. This is an action at law to set up and enforce a "furnisher's" lien for materials used upon premises now owned by the appellant, Green. A jury was waived, and there was a judgment declaring the lien.

Wall, the then owner of the premises, contracted with one Vaughn to make certain repairs and alterations, and to furnish the materials. Vaughn agreed to take in payment an order on one of Wall's debtors in part settlement, and that Wall should work out the rest of his bill.

Vaughn, on his own credit, contracted with the plaintiff, Williams, for the materials, and that they should be delivered on Wall's premises. Pending the improvements, Wall sold the premises to the plaintiff in error. Part of the materials were delivered before this sale and a part after. Upon the completion of the work, Vaughn having failed to pay the subcontractor, Williams, for the materials so furnished, the latter, within the time required by the statute, gave notice of his claim to a lien on the premises both to Wall and Green, his vendee.

Wall and Vaughn being insolvent, Williams seeks to enforce his lien as a furnisher against the building to which they were furnished.

It appears that when Green bought he went to

Vaughn, the contractor, to ascertain whether he claimed any lien as a mechanic, with a view of withholding from his vendor a sufficiency of the purchase-price to protect himself. Vaughn informed him as to the arrangement with Wall in regard to payment, and assured him that he claimed no lien. Under this assurance the vendee paid the purchase-money in full and took deed.

It is clear that, under this state of facts, Vaughn could not assert any lien as against such a purchaser. But the lien in favor of the furnisher of materials is distinct from, and independent of, that of the original contractor. The statute gives the lien to several classes of persons, and the lien of each depends upon the statute, and is not derived from the right or dependent upon the existence or non-existence of the lien of any other. The contractor may by contract or conduct waive or estop himself. But his subcontractor may nevertheless bring himself within the protection of the statute, and independently assert a lien for his work or materials.

That Williams sold these materials to the contractor, and upon the personal credit of the contractor, does not prevent the creation of the statutory lien, unless he expressly waived the lien, or has by his conduct estopped himself from its assertion. Nothing of that sort appears in the evidence. Green knew nothing of Vaughn's contract for materials with Williams. Williams was equally ignorant of the sale by Wall to him. He did

nothing to mislead the purchaser. He did nothing to cut himself off from the assertion of any lien given him under the statute.

But it is insisted very earnestly for plaintiff in error that he purchased the property without any notice of Williams' claim; that no notice was given him, and the claim remained unregistered until after he had bought and paid for the property. It is also shown that he knew nothing of the delivery of materials after he bought, until after delivery, and after the materials had been worked into the house. The notice required by the statute was given within thirty days after the completion of the contract, and, we may add, within thirty days after the delivery of the last of the materials he had contracted to furnish. This claim was then registered as required by the statute, and suit brought within ninety days. Does the lien begin only when the notice has been given, or does it begin when the delivery of the materials begins? Upon the solution of this depends the judgment.

Under the old Act of 1845–6, Ch. 118, carried into Code (T. & S.) as § 1986, the lien given by the Act of 1825, Ch. 37 (being § 1981, Code of T. & S.), was extended to every person "employed by such mechanic, founder, or machinist to work on the building, * * * or to furnish materials, if, at the time he begins to work or furnishes materials, he notifies the owner of the property, in writing, of his intention to rely upon

the lien." It is clear that, under this original Act, the lien *began when the delivery of materials began,* provided notice was then given. If there was any delay in giving the notice, the lien was lost. *Shelly* v. *Hicks,* 1 Sneed, 197.

To meet such a result, § 1986 (T. & S.) was so amended by the Act of 1881, Chapter 67, Section 2, as to add to it the following :

"Such person shall also have a lien, if such written notice is served on the owner during the progress of the work, or after its completion, and before the contractor has been paid, but only to the extent of any sum or balance then due or to become due under said contract."

Here it is seen that the effect of the failure to give notice of the intent to rely upon the lien at the commencement of the delivery was to limit the lien to the *balance due* or to become due to the original contractor. This amendment of the Code was itself amended by the Act of 1889, Ch. 103, so as to give the *same lien* originally extended to the contractor to all such *subcontractors* as are mentioned in § 1986, and in the Act of 1881, as should, "within thirty days after the building is completed, or the contract of such laborer, mechanic, or workman shall expire, or he be discharged, * * * notify, in writing, the owner of the property on which the building or improvement is being made * * * * that said lien is claimed ; * * * * *Provided,* A statement of the amount due for such

work, labor, or material shall be filed with the County Register; * * * * and this registration shall be notice to all persons of the existence of the lien."

By this amendment the limitations of the lien to the *balance* due the contractor, when the notice was not given before the materials were delivered, was removed. By the same Act the owner is protected against demands which should come upon him after payment to the contractor, by being permitted to take a bond, and to have summary relief thereon. This Act was construed, and its constitutionality vindicated, in *Cole Manufacturing Co.* v. *Falls*, 90 Tenn., 471 *et seq.*

Now, the Act amended by the two Acts we have cited clearly provided that the lien should begin when the work began, or when the delivery of materials began, provided notice was given of the intent to rely upon the lien before the work began or the delivery of materials began. The effect of the amendment is not to postpone the beginning of the lien, but to postpone the *time when the notice may be given* of the *intent to rely* on the lien. The lien begins when the delivery begins. It is lost if notice be not given within the time specified in the statute. Any other construction would defeat the purpose of the Act. If the property, pending the improvements, may pass to a vendee freed from the lien, then it would be likewise subject to judgment and attachment liens, and a mortgagee would acquire a su-

15—8 p

perior right. If this be the meaning of the amendment of 1889, then the persons intended to be benefited by a postponement of the time within which notice must be given of intent to rely upon the lien, have been really injured and misled to their ruin. We are strengthened in this conclusion from a consideration of the character of the lien extended to " persons employed by such mechanic," etc.

The lien given to the original contractor for work or materials, as defined in § 1981, Code of T. & S., was expressly declared to " *continue* for one year after the work is finished or materials furnished, * * * and bind the lot or land, although the owners may convey or otherwise dispose of the same." This lien did not depend upon notice to the owner, or owe its continuance to any registration; yet, being a statutory lien, subsequent incumbrancers or purchasers were compelled to take notice of it, and took the property during the time of its continuance subject to its existence. *Weller* v. *McNabb*, 4 Sneed, 422.

This lien, given primarily only to the original contractor, was extended to subcontractors for work or material by the various Acts we have cited. The lien thus extended continues, by the force of the statute, for ninety days after registration, and binds the property of the owner, "although he may convey or otherwise dispose of it;" provided only, that notice is given and registration made in the manner pointed out by the amendments.

Any one purchasing property under improvement, and before notice and registration, takes it subject to the statutory notice that mechanics and furnishers may perfect the inchoate and statutory lien by the statutory notice and registration. The statute is notice to all who deal with the property, and purchasers cannot complain, because they buy with a knowledge of the law, whereby a lien may rest upon the property they buy.

The registration required by the Act of 1889 was held not to be necessary as between the owner and material-man, and in the same case it was decided that payment by the owner to the contractor before notice did not defeat the furnisher's lien. *Reeves* v. *Henderson*, 6 Pickle, 521.

Very little aid is to be derived from the examination of cases from other States, unless we examine the statute under construction. In some cases the lien arises only from the notice. In others it does not depend upon notice at all. In still others it is lost unless the notice be given within a specified time. Under one of the earlier New York statutes, that of 1851, the interest affected by the lien was limited to that belonging to the owner at *the time notice was filed.* *Hauptman* v. *Catlin*, 20 N. Y., 247.

Under a subsequent Act, the lien was construed to begin as the materials were furnished or when the work was begun, and that it followed the property into the hands of whosoever should afterward acquire it. Under that Act, a purchaser,

after the lien had begun, was held not a necessary party, as the statute gives a specific lien on the property, and authorized a proceeding *in rem.* It was urged that the statute was unconstitutional on account of this remedy, " as it may' enable the claimant to reach the property of a third party without due process of law." The Court answered this objection by saying: " The services were performed while the defendant was the owner, and he could not relieve the property 'from the lien nor absolve himself from his contingent liability by a subsequent conveyance to a third person. There is no provision of the Constitution which precludes the Legislature from declaring a statutory lien, in respect to future contracts, in favor either of the contractor, the subcontractor, or the laborer, upon the land of the owner, at whose instance and for whose benefit the services are rendered. The Act of 1852 was in force when the contract in question was made; and every contract is presumed to be executed with reference to existing laws, and subject to such modifications, in respect to the remedies of the parties, as may result from subsequent legislation, if free from constitutional objection. The question as to the rights of Bell, the grantee, is not legitimately involved in the present appeal; but, as he purchased property which was subject to an existing statutory lien, it is to be presumed that the price was fixed with reference to the incumbrance, or that he secured himself from loss by appropriate covenants. Be

that as it may, the statute is free from constitutional objection." 31 N. Y., 287.

The constitutionality of our own Act of 1889 was supported by Judge Caldwell by a like line of reasoning. 90 Tenn., 471.

That the lien begins with the work or on the commencement of delivery of materials, and is perfected or continued by the notice, has been frequently decided. So it has been often decided that a purchaser or incumbrancer, after the beginning of the lien and before the time required for notice, takes subject to the statutory lien, provided it is followed by the statutory notice. Am. and Eng. Ency. of Law, Vol. XV., 111, 112, and cases cited.

Judgment affirmed.