ELECTRIC LIGHT CO. *v.* GAS CO.

(*Knoxville.*      September  30,  1897.)

1. MECHANICS' LIEN.  *Waiver.*

The acceptance of collateral security for part of an amount en-
titled, under the statutes, to a mechanics' lien on property im-
proved, raises a *prima facie* presumption that the lienor thereby
intends to waive his lien on the property as to the secured part
of his claim but not as to unsecured balance.  (*Post, pp. 373–378.*)

Code construed: ¿ 3531 (S.); ¿ 2739 (M. & V.); ¿ 1981 (T. & S.).

Cases cited: Campbell *v.* Baldwin, 2 Hum., 248; Marshall *v.* Christ-
mas, 3 Hum., 616; Fogg *v.* Rogers, 2 Cold., 290; Burson *v.* Dos-
ser, 1 Heis., 759; Brevard *v.* Summar, 2 Heis., 97; Hines *v.* Per-
kins, 2 Heis., 401; Sehorn *v.* McWhirter, 6 Bax., 311; Whitehurst
*v.* Yandall, 7 Bax., 228: Sehorn *v.* McWhirter, 8 Bax., 205; Ir-
vine *v.* Muse, 10 Heis., 477; Zwingle *v.* Wilkerson, 94 Tenn.,
246; 2 Tenn. Chy., 76; 17 Wall., 6.

2. SAME.  *Rebuttal of presumption of waiver.*

The presumption of an intention to waive a mechanic's lien aris-
ing from the taking of collateral security for the debt, is re-
butted by proof of an agreement of the parties that the lien
was to continue.  (*Post, pp. 378–380.*)

3. SAME.  *Estoppel.*

The claimant of a mechanic's lien estops himself to assert his
lien as against the innocent holders of bonds reciting that
they are secured by first mortgage on the improved property,
by suggesting the issue of such bonds and offering to take
part of the same as collateral security for a part of his lien
claim, and by assisting in the sale of the balance of such bonds
to innocent purchasers, though the latter are not shown to
have been directly influenced by his statements or assurances.
(*Post, pp. 380–386.*)

Cases cited and approved: Merriwether *v.* Larmon, 3 Sneed, 452;
Fields *v.* Carney, 4 Bax., 141; Green *v.* Williams, 92 Tenn.,

Electric Light Co. *v.* Gas Co.

220; Howell *v.* Hale, 5 Lea, 405; Galbraith *v.* Lunsford, 87 Tenn., 89; 100 U. S., 580; 102 U. S., 76; 1 Wall., 281; 31 Pa. St. 334.

4. SAME. *Prior to mortgage.*

A mechanic's lien for materials takes precedence of the lien of a mortgage registered after the delivery of the materials, under a contract, had begun. (*Post, pp. 386–388.*)

Code construed: § 3536 (S.); § 2742 (M. & V.); § 1982 (T. & S.).

Cases cited: Green *v.* Williams, 92 Tenn., 224; Reid *v.* Bank, 1 Sneed, 262; Pride *v.* Viles, 3 Sneed, 125.

5. PRINCIPAL AND AGENT. *Responsibility of principal for agent's acts.*

What one does through another, he does himself. (*Post, p. 381.*)

6. ATTORNEY'S FEES. *Allowed out of general fund.*

Counsel for complainant in a general creditor's bill are entitled to receive reasonable compensation from any fund ultimately recovered for the benefit of creditors generally. (*Post, pp. 388, 389.*)

Cases cited and approved: Moses *v.* Bank, 1 Lea, 401; Hume *v.* Bank, 13 Lea, 496; Grant *v.* Lookout Mountain Co., 93 Tenn., 691; Rogers *v.* O'Mary, 95 Tenn., 514.

7. COURT OF CHANCERY APPEALS. *Findings of fact conclusive.*

All findings of fact by the Court of Chancery Appeals are conclusive, and not subject to review. (*Post, pp. 379, 380.*)

Act construed: Acts 1895, Ch. 76.

Cases cited and approved: Austin *v.* Harbin, 95 Tenn., 601; Bradshaw *v.* VanValkenburg, 97 Tenn., 317; Railroad *v.* Knoxville, 98 Tenn., 1.

---

FROM SULLIVAN.

---

Appeal from Chancery Court of Sullivan County. HUGH G. KYLE, Ch.

CURTIN & HAYNES and C. J. ST. JOHN for Electric Light Co.

CHAS. R. VANCE for Gas Co.

CALDWELL, J. The proceedings in this cause were commenced by a general creditors' bill, brought to settle and wind up the affairs of the Bristol Gas, Electric Light & Power Company, on the ground of corporate insolvency. Upon appeal from certain parts of the Chancellor's decree, the cause was transferred to the Court of Chancery Appeals, and from the decree of that Court it is again appealed to this Court.

Without a recital or discussion of the cause at large, the particular matters now open will be stated and considered separately.

1. As to Bartlett, Hayward & Co. This firm, located at Baltimore, Md., contracted to furnish and erect certain apparatus for gasworks for the Bristol Gas, Electric Light & Power Company, at Bristol, Tenn., at the price of $17,400, to be paid in two installments—$8,700 in cash, upon delivery of the materials at Bristol, and $8,700 in a six months' note, to be executed on completion of the apparatus and accompanied by a collateral consisting of $10,-000 of the first mortgage bonds of the company, such bonds to be a part of a total issue of $60,000 of bonds to be made thereafter. A written proposition, embodying these terms, was submitted by Bartlett, Hayward & Co. on February 26, 1891, and it

was accepted, in writing, by the Bristol Gas, Electric Light & Power Company, April 8, 1891.

Shipments were soon commenced, and all, or about all, of the materials embraced in the contract were delivered by the first day of August, 1891. On the fourth day of August, 1891, the Bristol Gas, Electric Light & Power Company caused to be registered a mortgage upon its entire plant, to secure an issue of $60,000 of first mortgage bonds. Bartlett, Hayward & Co. went on and completed their work in due time, and according to contract. But the company made default as to the agreed cash payment, and, in lieu thereof, on the fifth of August, 1891, gave its sixty days' note for the $8,700 due, and later, in the same month, it deposited with Bartlett, Hayward & Co. $10,000 of its first mortgage bonds as collateral for that note. After the note matured, and was protested for nonpayment, the company deposited, as additional collateral therefor, a note for $2,500 on the Bristol Land Company. The balance of the indebtedness to Bartlett, Hayward & Co. was not closed by note and secured as specified in the contract, but remained in open account, and without collateral. The other $50,000 of bonds passed into the hands of other parties to this litigation, and, like those transferred to Bartlett, Hayward & Co., are unpaid. In March, 1892, Bartlett, Hayward & Co., having received nothing on their note or account, filed a bill against the Bristol Gas, Electric Light & Power Company to enforce a

furnisher's and mechanic's lien on the property improved, being the same covered by bond mortgage. The relief sought in that bill was granted by decree entered in August, 1892. Thereafter, in September, 1892, and before the order of sale could be executed, the bill in the present cause was filed in the same Court, and injunction obtained. The complainants are creditors of the Bristol Gas, Electric Light & Power Company, and some of them are holders of its mortgage bonds. They impeach the claim of Bartlett, Hayward & Co. to a lien on the mortgaged property, and allege that they waived, or estopped themselves from claiming, the lien that they might otherwise have had, by their contract and action in connection with the bonds of the company and the other collateral given and accepted. Both the Chancellor and the Court of Chancery Appeals adjudged the continuing existence of the lien claimed, and by decree gave it preference over all the mortgage bonds.

The general statute (Code, § 1981; M. & V., § 2739; Shann., § 3531) creates a lien on the lot or land improved in favor of persons who, by special contract with the owner or his agent, construct, build, or repair any house, fixtures, or machinery, or improvements thereon, or furnish fixtures, machinery, or materials for the same.

Undoubtedly, the materials furnished and work done by Bartlett, Hayward & Co. were of such character as to fall within the provision of this law;

nevertheless, the fact that they received $10,000 of the company's mortgage bonds, and also the $2,500 note on the Bristol Land Company, as security for the $8,700 of their debt first maturing, raises a presumption of an intention to waive the statutory lien for that $8,700.

A vendor, selling land on time, is presumed, in the first place, to intend to retain his lien on the premises conveyed, to secure the payment of the purchase money, and if the vendee assert the non-existence of such intention the burden is upon him to show it; and, if the vendor take other security for the purchase money, he is presumed, in the second place, to intend to waive his lien, and to rebut this presumption the burden of proof is on him. *Campbell* v. *Baldwin*, 2 Hum., 248, 258; *Marshall* v. *Christmas*, 3 Hum., 616; *Fogg* v. *Rogers*, 2 Cold., 290; *Burson* v. *Dosser*, 1 Heis., 759; *Brevard* v. *Summar*, 2 Heis., 97; *Hines* v. *Perkins*, *Ib.*, 401; *Sehorn* v. *McWhirter*, 6 Bax., 311; *Whitehurst* v. *Yandall*, 7 Bax., 228; *Sehorn* v. *McWhirter*, 8 Bax., 205; *Irvine* v. *Muse*, 10 Heis., 477; *Zwingle* v. *Wilkerson*, 94 Tenn., 246; *Cardona* v. *Hood*, 17 Wall., 6; *Hagar* v. *Hagar*, 2 Tenn. Chy., 76; 2 Story's Eq. Jur., Sec. 1226; 3 Pom. Eq. Jur., Sec. 1252; 28 Am. & Eng. Enc. L., 163, 176–178; 2 Jones on Liens, Secs. 1064, 1086, 1090.

The mechanics' lien is attended by the same presumptions, and is subject to the same rules of evi-

dence. 2 Jones on Liens, Secs. 1500, 1519, 1520; Phillips on Mechanics' Liens, Sec. 280, p. 492.

It follows, therefore, as already stated, that a *prima facie* case of waiver by Bartlett, Hayward & Co., as to that part of their claim represented by the $8,700 note, arises from their acceptance of collateral security therefor; and the presumption of waiver to that extent is the stronger, perhaps, because the $10,000 of mortgage bonds so received purported to be secured by a first lien on the same property, and, in that way, were inconsistent with the existence of a prior mechanics' lien. The presumed waiver is limited to the $8,700, for whose security the collateral was deposited, and does not extend to the balance of the debt for which no security was given.

Jones says: "An agreement to receive a conveyance or mortgage of real estate as part payment, is a waiver of the lien only so far as the payment goes. It is not a waiver of lien as to the residue not paid, any more than the acceptance of money as part payment would be. An agreement to take a mortgage upon the same property, in part payment for the materials furnished for a house, is a waiver of a right of lien for such part, if the mortgage is duly tendered, but it is no waiver of a lien for the balance of the lien claim." 2 Jones on Liens, Sec. 1524.

Phillips says: "Receiving a conveyance of real estate as part payment of a claim for erecting build-

ings thereon, is not a waiver of the lien for the residue, any more than the acceptance of money as part payment would be.'' Phillips on Mechanics' Liens, Sec. 286, pp. 500, 501.

Waiver of the lien as to the whole debt cannot be presumed from the acceptance of collateral security for a specific part of it.

The original contract in this case, it will be remembered, provided that Bartlett, Hayward & Co. should have $10,000 of the company's bonds as collateral security for the latter half of their debt, yet that provision, of itself and without more, did not raise a presumption that they waived their lien as to that part of the debt. Compliance on the part of the company—a delivery or tender of the bonds—was necessary to produce that result. No delivery or tender was made, and, consequently, the presumption did not arise. ''All the cases agree that there will be no waiver when the agreement to give the note or other security has not been performed by the promisor.'' Phillips on Mechanics' Liens, Sec. 285, pp. 498, 499.

An agreement to accept security does not impair the lien, if the agreement to furnish the security be not fulfilled. 2 Jones on Liens, Sec. 1525. Therefore, the presumption of waiver arose as to the first half of the debt only, it alone, and not the other half, having been secured by an actual deposit of collaterals.

A presumption of waiver, as such, is rebuttable,

and may be overcome by satisfactory evidence to the contrary. Concerning the presence of such evidence in this cause the Court of Chancery Appeals, in its opinion, delivered by Judge · Wilson, said: ''The explicit testimony of the members of the firm of Bartlett, Hayward & Co., as well as of Mr. Laftwich, the president of the defendant gas company, is to the effect that it was expressly understood and agreed, in all the negotiations between the firm and the gas company, represented by its president, that the firm was not to release its mechanics' lien, and that it was understood and agreed that their lien was not to be released or affected by the agreement to accept the bonds as collateral security. There is no evidence to the contrary in this record. So that the fact is established, by the evidence in the record, that the firm, in the contract it entered into with the gas company, and in accepting the bonds issued under the mortgage and the note as collateral, did not thereby understand that they were releasing or abandoning their mechanics' and furnishers' lien. On the contrary, it was their understanding and agreement with the officials of the company with whom they dealt, that the lien was to still continue.''

This finding, like all findings of fact by that Court, is conclusive (Acts 1895, Ch. 76, Sec. 11; *Austin* v. *Harbin*, 95 Tenn., 601; *Bradshaw* v. *Van-Valkenburg*, 97 Tenn., 317; *Knoxville, C. G. & L. R. R. Co.* v. *City of Knoxville*, 98 Tenn., 1, S.

C., 37 S. W. Rep., 885), and, being so, it completely rebuts the presumption that Bartlett, Hayward & Co. intended to waive their lien as to the $8,700 note by accepting security therefor. It overcomes that presumption, and affirmatively shows · that they intended to preserve their lien for their entire debt; and hence, as between them and the company, there can be no doubt that they are entitled to enforce it.

The complainants, however, may stand upon higher ground than the company. Passing the mere question of waiver, they go beyond, and contend that, whatever may be true as to the company itself, Bartlett, Hayward & Co. are equitably estopped to assert their lien to the prejudice of those holding the other $50,000 of first mortgage bonds. They insist that Bartlett, Hayward & Co. not only accepted $10,000 of the company's bonds as security for their claim, but that they went further, and gave aid and encouragement to the company in the sale of the other bonds; and that they thereby estopped themselves from asserting their mechanic's lien as a prior charge upon the property mortgaged to secure those bonds.

Estoppel does not always rest on the intention of the party to be affected by it, but is dependent, rather, upon the reasonable or legitimate effect of his statement or conduct in the particular matter upon the course of other persons. He will not be allowed to assert his lien to the prejudice of persons whom he has induced to believe that his debt

has been satisfied, or that he will claim no lien, and who, in that belief, have purchased that property on which the lien rests, or invested in bonds covered by mortgage thereon. As to such persons, he is absolutely concluded by his statement or conduct, though, in fact, contrary to the real truth of the matter; and, in this connection, conduct includes both affirmative and negative action. Silence is sometimes as significant as a positive assertion, and, when of such import, is equally conclusive in favor of the person influenced thereby. Furthermore, a man is as much bound by the conduct of another person aided or encouraged by him, as he would be had he done the thing himself. What one does through another, he does himself.

The doctrine of equitable estoppel, or estoppel *in pais*, is founded in natural justice, "and is a principle of good morals as well as law." "The primary ground of the doctrine is that it would be a fraud in a party to assert what his previous conduct has denied, when, on the faith of that denial, others have acted." *Hill* v. *Epley*, 31 Pa. St., 334; *Gregg* v. *Von Phul*, 1 Wall. (U. S.), 281; 2 Herman Estp. & Res. Jud., 1090.

"The vital principle is that he who, by his language or conduct, leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and

falsehood, and the law abhors both.'' *Dickerson* v. *Colgrave*, 100 U. S., 580.

''What I induce my neighbor to regard as true is the truth between us, if he has been misled by my asseveration.'' *Kirk* v. *Hamilton*, 102 U. S., 76.

''One is estopped from alleging the truth when his assertion of a falsehood or his silence has been the inducement to action by another party, which would result in loss but for the estoppel.'' 2 Herman, Sec. 995, p. 1119.

Greenleaf says: ''Admissions, whether of law or of fact, which have been acted upon by others, are conclusive against the party making them, in all cases between him and the person whose conduct he has thus influenced. It is of no importance whether they were made in express language to the person himself, or implied from the open and general conduct of the party; for, in the latter case, the implied declaration may be considered as addressed to everyone in particular who may have occasion to act upon it. In such cases the party is estopped, on grounds of public policy and good faith, from repudiating his own representations.'' 1 Greenl. Ev., Sec. 207.

This language of the learned text-writer was quoted with approval and applied by this Court in *Merriwether* v. *Larmon*, 3 Sneed, 452, and in *Fields* v. *Carney*, 4 Bax., 141, 142.

In the recent case of *Green* v. *Williams*, 92 Tenn., 220, it was held that a mechanic who en-

couraged a sale of property by representing that he had no lien on it, was, by his representation, estopped from asserting his lien thereafter to the prejudice of the purchaser.

"This same principle applies in all cases where a party induces another to purchase land, or loan money thereon, by stating it to be unincumbered, and withholding notice of his claim or lien." 2 Herman, Sec. 1199.

Even a married woman is estopped to deny the consideration for the execution of a mortgage on her separate estate, to the injury of one whom she induced to purchase the mortgage debt (*Howell* v. *Hale*, 5 Lea, 405), or to assert title against persons misled to their prejudice by her acts. *Galbraith* v. *Lunsford*, 87 Tenn., 89.

"An estoppel *in pais* may be created either by the acts of the party himself or by the acts of his agent, if it appears that the acts of such agent are within the scope of his authority." 2 Herman, Sec. 1071.

Authorities defining and illustrating the wholesome doctrine of equitable estoppel might be multiplied indefinitely, but those cited are deemed amply sufficient for the purposes of this case. Are Bartlett, Hayward & Co. estopped to assert their furnishers' and mechanics' lien as a charge on the company's property prior to the rights of other persons holding $50,000 of the mortgage bonds?

These lien claimants, at the outset, suggested that

the company should issue $60,000 of bonds, to be
covered by first mortgage on this property, and of-
fered to take $10,000 of them as collateral for the
latter half of their proposed debt. Their suggestion
and offer were accepted as made, and the company
executed the mortgage and issued the bonds accord-
ingly, and delivered $10,000 of them to these claim-
ants, but as collateral for the former half of their
debt, instead of the latter half, as at first agreed.
The mortgage was executed and the bonds issued
with the knowledge and consent of Bartlett, Hay-
ward & Co. The bonds were in negotiable form,
and all of them recited that they were secured by
a first mortgage on the company's property. In
other words, they appeared to be first mortgage
bonds in fact and as originally suggested and in-
tended. That they were or could be so was entirely
inconsistent with the existence of any prior lien, and
in utter antagonism to the claim now preferred by
these claimants, who had suggested the issuance of
the bonds in the first instance, and who had full
knowledge that they were negotiable in form, and
that they contained the recital mentioned. The com-
pany did negotiate the other $50,000 of bonds, and,
for value, passed them to persons ignorant of the
existence or claim of any prior lien on the prop-
erty. These claimants knew that the company in-
tended to negotiate the bonds, and actively encour-
aged it to do so.

In relation to this, the Court of Chancery Appeals

said: "We further find, as a fact, that the firm of
Bartlett, Hayward & Co., in a certain sense, endeav-
ored to aid the gas company in the disposition of
its bonds. Doubtless it did so because it hoped
thereby to get or secure a satisfaction of its debt."
And again: "It may be also said to be established
by the evidence that a member of the firm of Bart-
lett, Hayward & Co. aided in efforts to dispose of
the bonds issued under the mortgage, but there is
no evidence that any of the bondholders acquired
any of their bonds upon the representations of said
firm or any member thereof, or that they relied
upon any statements or assurances given to the pub-
lic by said firm with respect to the bonds."

Epitomized, the facts on this question are these:
Bartlett, Hayward & Co. suggested the execution of
a mortgage and the issuance of bonds inconsistent
with and antagonistic to their claim of lien; con-
sented to the consummation of that scheme, there-
after, in the hope of collecting their debt from pro-
ceeds; gave aid to the company in efforts to sell
$50,000 of the bonds, and the company ultimately
sold them for value to innocent purchasers, who are
not shown to have been influenced directly by the
representations, statements or assurances of Bartlett,
Hayward & Co.

This makes a complete case of estoppel. Having
helped to bring about the bond issue, and encouraged
the company to put $50,000 of the bonds on the
market, Bartlett, Hayward & Co. will not be per-

15 P—25

mitted to assert their lien to the injury of the purchasers, though they may not have directly influenced them to buy. Encouragement to the company, with all the facts before them, made Bartlett, Hayward & Co. responsible for the company's action; and the company, by selling first mortgage bonds, represented the property as free from prior incumbrance.

The bonds themselves contained the misleading representation, and by giving aid and encouragement in their sale, Bartlett, Hayward & Co. became responsible for that representation, and thereby precluded themselves from setting up a prior lien as against those acquiring the bonds. The meaning of that representation, so far as Bartlett, Hayward & Co. are concerned, was that they had no prior lien on the property, and to that extent they are bound, as between themselves and the purchasers of the bonds. As to other persons, the representation is of no efficacy whatever.

Pomeroy says: "The measure of the operation of an estoppel is the extent of the representation made by one party and acted on by the other. The estoppel is commensurate with the thing represented, and operates to put the party entitled to its benefit in the same position as if the thing represented were true." 2 Pom. Eq. Jur., Sec. 813.

2. As to the Phœnix Iron Works Company. In the latter part of April, 1891, this corporation, which was located at Meadeville, Pa., contracted to furnish and erect for the Bristol Gas, Electric Light

& Power Company, as part of its plant at Bristol, Tenn., two "compound condensing automatic cut-off engines," at the price of $7,167.50. The engines were furnished and erected according to contract, and a bill was pending to enforce a furnishers' and mechanics' lien on the plant when these proceedings were commenced. The present complainants allege that the engines were delivered and put up after the execution of the mortgage already mentioned, and for that reason they say that no lien was acquired as against the holders of the mortgage bonds. The Chancellor and the Court of Chancery Appeals decided this question against the bondholders, and gave the lien claimants preference.

A mortgagee, in a registered mortgage, is entitled to priority over the lien of a mechanic who furnishes materials and does work upon the mortgaged property at the instance of the mortgagor (*Reid* v. *Bank*, 1 Sneed, 262; *Pride* v. *Viles*, 3 Sneed, 125), unless the mortgagee has written notice of the same before the materials are furnished or the work begun, and consent thereto, or fails to object within ten days after the receipt of the notice, in which case the lien of the mechanic will have priority over the mortgage. Code § 1892; M. & V., § 2742; Shann., § 3536.

The mechanic's lien begins when delivery of the materials begins (*Green* v. *Williams*, 92 Tenn., 224), and not when the contract is made, or the materials put in condition for delivery.

As has been seen, the Phœnix Iron Works Company made its contract about the last of April, 1891. The Court of Chancery Appeals found that it "immediately began work, getting out and preparing the machinery, etc., provided for under the contract, and shipped and delivered the same. These shipments were made from about May 20, 1891, to July 29, 1891." Though not stated in explicit terms, it is evident from this finding that some, if not the whole, of the materials was delivered between the two dates' mentioned; and, that being so, the delivery was begun, and the lien created, anterior to the registration of the mortgage, on the fourth day of August, 1891. This gave the Phœnix Iron Works Company priority of lien over the holders of the mortgage bonds, though the erection of the engines was not, in fact, completed until after the mortgage went to record.

3.   As to fees of counsel for the complainants. The Chancellor and the Court of Chancery Appeals, in view of their successive holdings that the complainants had brought practically no fund into Court for general creditors, were right in further holding that the counsel of complainants were not entitled to fees out of the fund, the proceeds of property sold, on which Bartlett, Hayward & Co. and the Phœnix Iron Works Company were adjudged to have prior liens; but since the decree of this Court must be adverse to Bartlett, Hayward & Co., to the extent of denying them priority over other bondholders, and, as a consequence, the complainants will thereby suc-

ceed in securing a large fund for the bondholders generally, the counsel of complainants are entitled to receive from that fund reasonable compensation for their services.   *Moses* v. *Ocoee Bank*, 1 Lea, 401; *Hume* v. *Commercial Bank*, 13 Lea, 496;   *Grant* v. *Lookout Mountain Co.*, 93 Tenn., 691; *Rogers* v. *O'Mary*, 95 Tenn., 514.

4.   One-half of all costs will be paid by Bartlett, Hayward & Co., and the other half will be paid out of that part of fund secured by the complainants.

Let decree be entered in accordance with this opinion.