IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## EASTERN DIVISION.

### SEPTEMBER TERM, 1923.

J. J. SAYLOR *v.* GEORGE M. TROTTER *et al.*

(*Knoxville.* September Term, 1923.)

1. **SHERIFFS AND CONSTABLES.** Anti-fee act held applicable to sheriff elected in August, 1922, whose term began September 1, 1922.

   Public Acts 1921, chapter 101, providing that certain officers shall receive salaries and shall account for their fees, and that the act shall take effect from and after September 1, 1922, as to all officials whose terms of office expire on or before September 1, 1922, and that as to all officials whose terms expire after said date the act is to take effect at the expiration of said term *held* applicable to a sheriff elected in August, 1922, and who began his term of office on or after September 1, 1922. (*Post, p.* 365.)

   Acts cited and construed: Acts 1921, ch. 101.

2. **CONSTITUTIONAL LAW.** Complainant held estopped to deny constitutionality of act.

   Where complainant ran for the office of sheriff, stated his express purpose during campaign and after election to operate his office in conformity with Public Acts 1921, chapter 101, and, further recognizing the validity of the act, qualified under it and made the required reports, and accepted the aid of deputies in performing his duties, he is estopped from denying that the act is unconstitutional. (*Post, pp.* 365-368.)

359

Cases cited and approved:   Dickerson v. Colgrove, 100 U. S., 578; Kirk v. Hamilton, 102 U. S., 68;   Electric Light Co. v. Gas Co., 99 Tenn., 371;   Evans v. Belmont Land Co., 92 Tenn., 348; Covington v. McMurry, 4 Hig., 378.

3. **INJUNCTION.**  Not granted to protect right complainant estopped to assert.

An injunction will not be granted to protect a right that complainant is estopped to assert.   (*Post, p.* 368.)

4. **INJUNCTION.**   Laches not amounting to estoppel may bar right to injunction.

Even laches not amounting to an estoppel in many cases will deprive complainant of his right to an injunction.   (*Post, pp.* 368, 369.)

Cases cited and approved:   Madison v. Copper Co., 113 Tenn., 331; Foster v. Jeffers, 140 Tenn., 446.

5. **SHERIFFS AND CONSTABLES.**   Sheriff having collected excess fees as property of county cannot challenge title of county thereto.

In view of Public Acts 1921, chapter 101, providing that the various county officers should be deprived of all their fees in excess of salary and office requirements, complainant sheriff having accepted and ratified the act and collected the excess fees of his office as the property of the county, he can no more challenge the right of his principal to such property than could any other agent question the title of his principal previously admitted. (*Post, pp.* 369-372.)

Acts cited and construed:   Acts 1921, ch. 101.

Cases cited and approved:   People v. Bunker, 70 Cal., 212;   Duplin County Board of Education v. Kenan, 112 N. C., 566;   Spokane County v. Allen, 9 Wash., 229;   Mayor, etc., of City of N. Y. v. Gorman, 26 App. Div., 191;   Outagamie County v. Zuehlke, 165 Wis., 32;   Green Co. v. Lydy, 263 Mo., 77;   Bonner v. Belsterling, 104 Tex., 432.

Cases cited and distinguished:   Collier v. Montgomery Co., 103 Tenn., 705;   Daniels v. Tearney, 102 U. S., 415.

6. **ESTOPPEL.**   Suit questioning validity of statute held not to affect public interest precluding estoppel.

Saylor v. Trotter.

A suit involving only the constitutionality of a statute requiring a sheriff to turn over all fees in excess of the salary and office requirements does not affect the public interest to such an extent as to prevent the invoking of the principle of estoppel. (*Post*, pp. 372-374.)

7. **STATUTES.** Suit held not such controversy as to require construction of statute.

A suit involving only the constitutionality of a statute requiring a sheriff to turn over all the fees in excess of his salary and office requirements is not such a controversy as to require any construction of the act. (*Post, pp.* 372-374.)

Cases cited and approved: Weaver v. Davidson Co., 104 Tenn., 315; Hickman v. Wright, 141 Tenn., 412; State ex rel. v. Mayor, etc., of Nashville, 83 Tenn., 697, State ex rel. v. Purdy, 36 Wis., 213; State ex rel. v. Collier, 72 Mo., 13; Carrothers v. Russell, 53 Iowa, 346; Alvord v. Collin, 20 Pick. (Mass.), 428.

FROM KNOX.

Appeal from the Chancery Court of Knox County.— HON. CHAS. HAYS BROWN, Chancellor.

SMITH, WORD & ANDERSON, for Saylor.

JOHNSON & COX, for Trotter and others.

MR. CHIEF JUSTICE GREEN delivering the opinion of the Court.

This suit was brought by the sheriff of Knox county attacking the constitutionality of chapter 101 of the Acts of 1921, commonly known as the "Anti-Fee Law."

The complainant, Saylor, was elected sheriff of Knox county in the August election, 1922, and qualified on the first Monday in September, 1922. He filed this bill April 3, 1923, charging that chapter 101 of the Acts of 1921 was

unconstitutional in many particulars set out, naming the county judge and the trustee of Knox county as defendants, averring that they were about to bring numerous suits against him on account of his failure to comply with certain provisions of the act of 1921, contending that he had no adequate remedy at law, and praying that the said act be declared unconstitutional, and that the said defendants be enjoined from undertaking to enforce its provisions against him. The defendants filed a demurrer coupled with an answer, and upon the hearing the chancellor dismissed the bill. Complainant has appealed to this court.

After stating the fact of complainant's election to the office of sheriff, and that he had qualified and entered upon the duties of that office, the bill proceeds as follows:

"When the complainant entered upon his duties as sheriff of said county, it was his expressed purpose to undertake the performance of his said duties, and to operate his office in all respects in conformity with the provisions of chapter 101 of the Public Acts of the General Assembly of 1921, known as the "Anti-Fee or Official Salary Law," but after a thorough and painstaking effort to do so finds from experience that it is wholly impracticable, if not impossible," etc.

In another paragraph of the bill this language is used:

"Complainant, as hereinbefore shown, says that, from the time of his entry upon the duties of the office of sheriff, he has accepted and acted upon the assumption that said act was valid, and that he would and could be able to comply with its provisions, and, in accordance with this assumption, he has made an itemized report, as required by the act to be made to the county judge for the months

of September, October, and November, since which time
he has made no reports, being advised that the meaning
of the provisions thereof are in many respects confusing
and ambiguous, rendering it necessary to have a construc-
tion of the act itself, and being further advised that the
act by its terms is not applicable to the complainant, and
if so, it is unconstitutional and void."

It fairly appears from another paragraph in the bill
that the complainant has applied for and has been al-
lowed certain deputies, which the law provides he may
have with the sanction of the criminal judge of his county,
and he speaks of the co-operation given him by the county
judge and the criminal judge in this respect.

Answering the bill, among other things, the defendants
say:

"It is admitted that when the complainant entered up-
on his duties as sheriff of said county it was his expressed
purpose, both during his campaign and after election, to
undertake the performance of his duties and to operate his
office in all respects in conformity with the provisions of
chapter 101 of the Public Acts of the General Assembly
of 1921, known as the Anti-Fee or Official Salary Law,
and for the purpose of assisting him in the performance
of these duties and keeping his accounts an office deputy
was allowed by the court and said office deputy is still
acting, but they deny that the sheriff finds from experience
that it is wholly impracticable, if not impossible, to faith-
fully and efficiently perform the duties of his office and
execute the laws as he is required to do by said statute
and other statutes in this State. They further deny that
the enforcement of said law will result in irreparable in-

jury and prevent the due performance of his duties and the execution of the law further than that if he executed the statute in controversy in this case he will be deprived of the fees of his office over and above $6,000 provided by said act."

Further answering, the defendants say this:

"It is admitted that the sheriff entered upon the duties of his office upon the assumption that said act was valid and that he would and could be able to comply with its provisions, and that in accordance with that assumption he has made an itemized report as required by the act to be made to the county judge for the months of September, October and November, since which time 'he has made no report. The very fact that he has made the report for the first quarter shows conclusively that he can do so for other quarters, and he is now estopped to say that he cannot comply with the provisions of said act, or that it is confusing and ambiguous, rendering it necessary to have a construction of the act."

Briefly speaking, chapter 101 of the Acts of 1921 provides that the clerks and masters of the various chancery courts, the clerks of the various county, probate, criminal, circuit and special courts, county trustees, registers, and sheriffs shall be deprived of all the fees theretofore accruing to them under our laws, except for special services as trustees or receivers, and that they shall be compensated for their services by salaries to be derived from the fees collected under our laws by their respective offices. The act then classifies the counties of the State and fixes the salaries for the various officers of each class. Excess of fees collected, above the salaries named, goes to the sev-

eral counties. It provides for certain proceedings whereby deputies are to be allowed to such officers when needed, provides for periodical reports and settlements by the different officers, and that the act "take effect from and after September first, 1922, as to all officials whose terms of office expire on or before said date," and that as to all officials whose terms expire after said date the act is "to take effect at the expiration of said term." It was the obvious purpose of the statute to make its provisions applicable as of the beginning of their new terms to all the officers named who entered upon a new term of office on or after September 1, 1922, and as of the latter date to all officers who entered upon a new term after the passage of the act, if their current terms expired before September 1, 1922.

Although a contrary contention is made, we think there is no doubt but that the act in question applies to the complainant's case. It was plainly intended to apply to all such officers as he, elected in August, 1922, who began a term of office on or after September 1, 1922.

Recurring now to the quotations heretofore made from the pleadings and to the facts disclosed thereby, which are not in controversy, and bearing in mind well-established rules of law, we must conclude that the complainant by his admissions and his conduct is estopped to question the constitutionality of chapter 101 of the Acts of 1921. All the facts upon which we predicate the estoppel appear on the face of the pleadings—averred in the bill, admitted in the answer.

We must judicially notice some recent state history. From early times the officers mentioned in the act of 1921

have been compensated upon a fee basis. In most of the counties of the State this has proven to be a satisfactory arrangement. In the larger counties, however, where the business of these offices was extensive, the aggregate amount of fees collected has reached enormous proportions. So that, after paying their deputies and the expenses of their offices, such officers for many years have been receiving extravagant emolument—emolument quite out of proportion to the reward received for similar service in any business or industry, and emolument far larger than necessary to procure that competent service the public requires.

This condition of affairs has naturally provoked general dissatisfaction, and several efforts have been made to procure legislation by which it would be remedied. Numerous bills have hitherto been introduced in the legislature to this end, and some of them have passed. These bills, however, touched many interests, and those of them that passed were diversely amended, as they went through, to overcome opposition from one source and another. They gathered such excrescences and suffered such mutilations, in the course of their passages as to come out constitutionally deformed; so deformed, in fact, that this court, under the Spartan prescripts of the Constitution, had to destroy them.

It has been charged that chapter 101 of the Acts of 1921 emerged in a condition approaching that of its predecessors. Citizens of the larger counties of our State were, therefore, not unnaturally dubious as to the integrity of the last enactment, and in the August election of 1922 were particularly interested in those candidates who professed

an intention to cherish and uphold the "Anti-Fee Law," and disclaimed the idea of an attack upon it. All the foregoing is common knowledge which this court cannot escape.

Under these circumstances the complainant ran for sheriff of the county of Knox—one of the larger counties of the State. According to the averments of his bill and of the answer filed herein, it was his expressed purpose, "both during his campaign and after election," to operate his office in all respects in conformity with the provisions of chapter 101 of the Acts of 1921. He took the oath of office, qualified, and recognizing the act of 1921 as valid, obtained from the constituted authorities the allowance of certain deputies to assist him in running his office. Further recognizing the act of 1921 as valid, he made reports as required by the act to the county judge for the months of September, October, and November, 1921. The complainant thus conceded the validity of the act in his campaign, by his reports to the county judge, and by accepting benefits under it, to-wit, the deputies to aid in the performance of his duties. These being the facts, we think the complainant has precluded himself from saying now that the act of 1921 is unconstitutional.

The doctrine of equitable estoppel is one of frequent application. It is constantly growing, and is applied to new conditions as they arise. It is founded on good morals. It rests upon the necessity of requiring men to deal honestly and fairly with their fellow men.

"The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury

by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both." *Dickerson* v. *Colgrove,* 100 U. S., 578, 25 L. Ed., 618.

"What I induce my neighbor to regard as true is the truth as between us, if he has been misled by my asseveration." *Kirk* v. *Hamilton,* 102 U. S., 68, 26 L. Ed., 79.

These propositions are elementary, and we need not assemble authorities in support of them. Equitable estoppel is considered in *Electric Light Co.* v. *Gas Co.,* 99 Tenn., 371, 42 S. W., 19; *Evans* v. *Belmont Land Co.,* 92 Tenn., 348, 21 S. W., 670, and in a learned and more recent opinion of the late Judge WILSON, *Covington* v. *McMurry,* 4 Hig., 378.

The complainant is here seeking an injunction. An injunction will not be granted to protect a right that a complainant is estopped to assert. Illustrations may be found in High on Injunctions, sections 549, 564, 618, and 1229.

"If the complainant himself has acted in such a way as to raise an estoppel against him, he will not be granted an injunction to prevent the act in question." 22 Cyc., 777.

Even laches, not amounting to an estoppel in many cases, will deprive a complainant of the right to an injunction. *Madison* v. *Copper Co.,* 113 Tenn., 331, 83 S. W., 658, and cases cited.

The estoppel here noted acts upon complainant with the same force, therefore, as if he were defendant in a suit by the county authorities to recover from him the excess of fees collected by his office, to which under the terms of the act of 1921 he was not entitled.

In such a plight, having assented to the validity of the

act in his campaign, having qualified under it, having acted under it, and having received benefits under it, there is no doubt but that the mouth of this sheriff would be closed to say the act was invalid.

Let us analyze the situation. The people, by the act of 1921, offered a salary of $6,000 a year for the performance of the duties of sheriff of Knox county, the offer containing certain other particulars heretofore mentioned. With the expressed purpose of discharging the duties of the office according to the terms of the offer, the complainant was selected by the people for the place. He qualified and took the office. Under the terms of the offer the sheriff might be allowed certain deputies to assist him, to be paid out of funds otherwise going to the county, and complainant availed himself of this advantage, thereby waiving for a consideration any right to deny his agreement. As final confirmation of the agreement upon which he had entered, he made three monthly reports to the county judge as required by the act.

How, then, can the complainant be permitted to say at this time that he is entitled to hold the office on different terms, or with greater reward? No such repudiation of previous conduct would be tolerated as between individuals and we have said that "a higher duty rests upon a public official to act and deal fairly than upon an individual." *Foster v. Jeffers,* 140 Tenn., 446, 205 S. W. 122.

Chapter 101 of the Acts of 1921 in as many words enacted that the various county officers should "be deprived of all their fees," etc., thereafter received by virtue of their respective offices, and, after deducting salary and other allowances, the excess fees were declared to be the prop-

148 Tenn.—24

erty of the different counties. So by the very language of the act under which he took office, and the provisions of which he accepted and ratified, the complainant collected these excess fees as the property of Knox county. He is no more to be permitted to challenge this property right of Knox county than any other agent would be allowed to question the title of his principal previously admitted.

The authorities fully sustain the conclusions we have reached.

The county of Montgomery contracted with the sheriff to keep the prisoners for a gross sum payable monthly, relinquishing to the county all fees allowed by law for such services. This contract was made under authority of an act of the legislature subsequently held invalid. The sheriff and the county acted under the contract for some time. Later the sheriff brought suit to recover from the county the difference between the amount paid him and the fees of the office which the county had received. This court, however, held that the sheriff was estopped to assert such a claim.

The court quoted and approved Black on Constitutional Law, as follows:

" 'Persons may be estopped from denying the constitutionality of a statute by participating in procuring its passage, by acquiescing in it after its passage, or by accepting benefits under it, although it may be invalid as to all other persons. And an individual has no right to complain that a statute is unconstitutional after he has endeavored to take benefits under it to the injury of others.' Black on Constitutional Law, section 35." *Collier* v. *Montgomery County*, 103 Tenn., 105, 54 S. W., 989.

The supreme court of the United States has said: "It is well settled as a general proposition, subject to certain exceptions not necessary to be here noted, that, where a party has availed himself for his benefit of an unconstitutional law, he cannot, in a subsequent litigation with others not in that position, aver its unconstitutionality as a defense, although such unconstitutionality may have been pronounced by a competent judicial tribunal in another suit. In such cases the principle of estoppel applies with full force and conclusive effect." *Daniels* v. *Tearney,* 102 U. S., 415, 26 L. Ed., 187.

In *People* v. *Bunker,* 70 Ca., 212, 11 Pac., 703, an official collected certain fees and resisted a suit to recover the excess over his stated compensation on the ground that the statute under which he acted was in violation of the Constitution of the United States. The supreme court of California held that the officer was precluded from making such a defense after acting under the statute.

In *Duplin County Board of Education* v. *Kenan,* 112 N. C., 566, 17 S. E., 485, the sheriff collected certain school money and was sued for the same by the school board. He defended on the ground that the act under which the school board claimed was unconstitutional, but inasmuch as he had proceeded under this act he could not assert its invalidity.

In *Spokane County* v. *Allen,* 9 Wash., 229, 37 Pac., 428, 43 Am. St. Rep., 830, the same conclusion was reached as to a prosecuting attorney collecting delinquent taxes and attempting to retain attorney's fees out of the same.

In *Mayor, etc., of City of N. Y.* v. *Gorman,* 26 App. Div., 191, 49 N. Y. Supp., 1026, representatives of a sheriff un-

dertook to assert the invalidity of an act regulating his fees, and endeavored to retain additional compensation. This claim was disallowed on the ground that the sheriff had acted under the act and recognized it as valid.

In *Outagamie County* v. *Zuehlke,* 165 Wis., 32, 161 N. W., 6, a like estoppel was applied to a county register who sought to make a similar question.

A strong case to the same effect is *Greene County* v. *Lydy,* 263 Mo., 77, 172 S. W., 376, Ann. Cas., 1917C, 274. The facts are quite similar to those of the case before us.

In *Bonner* v. *Belsterling,* 104 Tex., 432, 138 S. W., 571, a city officer challenged the validity of a recall provision. The court, however, held that he was elected under an act providing for recall, and that he could not question its validity; that he had gotten "just what he contracted for when he accepted the office."

Illustrations might be multiplied, but it seems unnecessary.

In our previous fee-bill cases, such as *Weaver* v. *Davidson County,* 104 Tenn., 315, 59 S. W., 1105, and *Hickman* v. *Wright,* 141 Tenn., 412, 210 S. W., 447, the facts of the particular controversies were not developed. The cases were up on appeals from orders upon demurrer or motion to dismiss. Moreover, in *Hickman* v. *Wright* a matter of great public interest was involved. By the statute there held invalid· county officers of all counties in the State except thirteen were left without any compensation whatever. Such an enactment would of course have paralyzed public service in the greater part of the State. The principle of estoppel here invoked will not be applied as against the public welfare. While the bill charges that the public

interest is affected in the present case, we can see nothing involved of any substance, except the matter of the sheriff's pay. · Neither do we see any real controversy between the sheriff and the county requiring any construction of the act at this time, although this is asked. It will be time enough to settle such questions when they arise.

We are not unmindful of *State ex rel* v. *Mayor, etc., of Nashville,* 83 Tenn. (15 Lea.), 697, 54 Am. Rep., 427, and the decisions upon which it rests; *State ex rel.* v. *Purdy,* 36 Wis., 213, 17 Am. Rep., 485; *State ex rel* v. *Collier,* 72 Mo., 13, 37 Am. Rep., 417; *Carrothers* v. *Russell,* 53 Iowa, 346, 5 N. W., 499, 36 Am. Rep., 222; *Alvord* v. *Collin,* 20 Pick. (Mass.), 428.

In these cases candidates promised to remit all or part of the salaries to which they were entitled by law, if elected. Such agreements were held to be against sound policy, as a sort of bribery of the public by candidates for office—à purchase of office by promises of money or services or both. Practices like these tend toward the selection of the lowest bidder among the candidates regardless of his merit.

The case before us is entirely different. The candidate here only expressed his purpose to do what the act required. This was his legal and moral duty as long as the act remained in force. He did not propose to donate or give up to the county anything, but only proposed to be satisfied with the compensation and perform the duties of the office upon the terms which the legislature had fixed.

We think the public interest will not be jeopardized by raising an estoppel, as we have done, against an officer who has assented to an act of the legislature, prescribing

his duties and his compensation, in a case where only his individual profit and convenience are at stake.

For the reasons stated, the decree of the chancellor will be affirmed. The demurrer is overruled, but, getting to the answer, we find therein admitted the determinative facts charged in the bill, and it would be idle to remand the case for proof, or further proceedings, before final decree.

McKINNEY, COOK, and MALONE, JJ., concur.