## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF TENNESSEE

### AT THE

## KNOXVILLE, SEPTEMBER TERM, 1921.

KINGSPORT BRICK CORPORATION *et al. v.* WM. H. BOSTWICK *et al.*

(*Knoxville.* September Term, 1921.)

1. **MORTGAGES.** Rights of Mortgagee not dependent on whether money was actually advanced.

In determining the priority of lien of party lending money under trust deed and that of materialmen, it was wholly immaterial whether the party lending the money had advanced the entire amount at the time material was furnished, if the obligation to advance the money existed. (*Post, pp. 37-39.*)

Cases cited and approved: Ragon v. Howard, 97 Tenn., 334; Burr v. Graves, 72 Tenn., 552; Cole Mfg. Co. v. Falls, 90 Tenn., 466; Allen & Bush v. Lanier et al., 41 Tenn., 540.

Case cited and distinguished: Lee v. Gibson, 104 Tenn., 698.

2. **MORTGAGES.** Lien of mortgage superior to subsequent mechanic's lien.

A mechanic's lien is subordinate to that of a mortgagee if the lien of the mortgage is of record prior to the time the mechanic's lien attaches, which is upon the date the work is performed or material furnished, under Shannon's Code, sections 3531, 3536, 3537, unless the mortgagee has written notice of the contract with the mortgagor before the work is begun and the materials furnished and consents thereto. (*Post, pp. 39-58.*)

Acts cited and construed: Acts 1825, ch. 37, sec. 1; Acts 1829, ch. 26, secs. 1, 2; Acts 1835, ch. 40; Acts 1845-46, ch. 118; Acts 1859-60, ch. 114.

(19)

Kingsport Brick Corp. v. Bostwick.

Cases cited and approved: Reid v. The Bank of Tennessee et al., 33 Tenn., 273; Jackson v. Kosseal, 30 Hun, 231; Bissell v. Pearce, 28 N. Y., 252; Charles v. Neigelson, 15 Bradw., 17; Sargeant v. Usher, 55 N. H., 287; State Bank v. Lowe, 33 N. W. Rep., 482; Case v. Allen, 21 Kan., 217-220; Smith v. Stevens, 36 Minn., 303; Hammonds v. Danielson, 126 Mass., 294; Reid v. Bank, 33 Tenn., 262; Pride v. Viles, 35 Tenn., 125; Green v. Williams, 92 Tenn., 224; Electric Light Co. v. Gas Co., 99 Tenn., 387; Green v. Williams, 92 Tenn., 224; Jonte v. Gill, 39 S. W., 750.

Cases cited and distinguished: Reid v. The Bank of Tenn., 33 Tenn., 262; Pride & Barnes v. Viles, 35 Tenn., 125. McGhee v. Edwards, 87 Tenn., 506; Leming v. Stephens, 95 Tenn., 444; Electric Light Co. v. Gas Co., 99 Tenn., 371; New Memphis Gaslight Co. Cases, 105 Tenn., 268; Reed v. Estes, 113 Tenn., 200; Gillespie v. Bradford, 15 Tenn., 168.

Codes cited and construed: Secs. 3531, 3536, 3537.

3. MORTGAGES. Lender of money held to have prior lien.

Where college sold lot and agreed to lend money for the construction of a building thereon, and the lot was actually conveyed and a trust deed executed and registered, the lien of the college under the trust deed was superior to lien of materialmen subsequently furnishing materials, although a contract was entered into between the purchaser and the college for the construction of the building, such contract being entered into in order to obtain a bond to protect the college, where no written notice was given to the college by the materialmen and its consent was not obtained, under Shannon's Code, sections 3531, 3536, 3537, and it was immaterial that the college was protected by the bond. (*Post*, pp. 58, 59.)

4. MORTGAGES. Lien secured by registered mortgage prior to subsequent mechanics' liens in absence of estoppel or agency.

A lien secured by a registered mortgage is necessarily prior to the attachment of subsequent liens, such as mechanics' liens, unless the holder of the prior lien has done something to mislead for his benefit those dealing with the mortgagor to their detriment and disadvantage, and thus make room for the application of the doctrine of estoppel, under Shannon's Code, sections 3531, 3536,

3537, or unless there exists the relationship or agency so as to make the principal bound to the contractor of materials and labor for the acts of the agent. (*Post, pp.* 59-63.)

Cases 'cited and approved: Bohn Mfg. Co. v. Knounze, 30 Neb., 719; Henderson v. Connelly, 123 Ill., 98; Rogers v. Central Loan & T. Co., 49 Neb. 676; Patrick Land. Co. v. Leavenworth, 42 Neb. 715.

### FROM JEFFERSON.

Appeal from the Chancery Court of Jefferson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— HON. BEN W. HOOPER, Chancellor.

POWERS & THORNBURGH, R. M. HICKEY, COX & TAY-LOR, McCANLESS & TAYLOR, J. CARL LAMBDIN, W. N. HICK-EY and HEAZEL & CAMBLOS, for appellants.

FRANK PARK, JR., for appellees.

MR. L. D. SMITH, Special Justice, delivered the opinion of the Court.

The controversy presented for our consideration and determination is one between creditors of W. H. Bostwick for priority of lien upon certain real estate belonging to the said Bostwick and his wife situated in Jefferson City, Tenn., upon which the said Bostwick constructed a brick building. The controversy is between Carson-Newman College on the one side, who claims priority of lien under a deed of trust, by which said property was conveyed to a trustee to secure an indebtedness due from Bostwick and his wife to said college, and the Kingsport Brick Corporation and other mercantile concerns on the other side, claiming mechanics' liens on said property by

reason of having furnished under a contract with the said Bostwick certain materials which went into the construction of said building.

This controversy comes to this court upon petition for *certiorari* by the Carson-Newman College to have reviewed and reversed the decree of the court of civil appeals adjudicating that their lien is subordinated to the mechanics' lien in favor of those furnishing materials.

The deed of trust by virtue of which Carson-Newman College claims priority was executed by W. H. Bostwick and wife to one Ben A. Morton, trustee, bearing date of February 8, 1916, conveying to him the property aforesaid, which was recorded in the register's office of Jefferson county on February 18, 1916. This deed of trust recites that William H. Bostwick and Margaret M. Bostwick are indebted to Carson-Newman College in the sum of $16,000, evidenced by promissory notes of even date with the deed, one for $3,000 payable in installments of $750 each six, twelve, eighteen, and twenty-four months after the 1st day of June, 1916, and one other note for $13,000, payable five years after date, said notes bearing interest at the rate of six per cent, payable semi-annually, and providing for ten per cent. attorneys' fees. In order to secure the payment of said notes, the trustee was authorized in this deed, in case of default being made in the payment of said notes, or any part thereof, or interest thereon, as same became due and payable or any taxes due on the property were not paid and the property not sufficiently insured, to proceed to sell the property at public auction for cash in bar of the equity of redemption after giving notice of time and place of

sale by advertising in some newspaper in Jefferson City for four consecutive weeks and apply the proceeds thereof, first, to the payment of the costs and expenses incident thereto, and, second, to the payment of the notes, interest, and attorneys' fees, if any, and, third, the surplus to the makers of said trust deed.

The contention of Carson-Newman College is that this deed was executed, delivered, and recorded prior to the furnishing of any material by the parties claiming a mechanic's lien.

The defendants to the petition for *certiorari* who are asserting mechanics' liens do not controvert the facts just stated, but contend that W. H. Bostwick, with whom they contracted to furnish the materials, was in fact, and in law, the agent of Carson-Newman College in the purchase of said material, or that the building was constructed by Bostwick for the use and benefit of the college. This contention is based upon the provisions of a building contract entered into by Bostwick and Carson-Newman College bearing date of February 1, 1916, and other circumstances, by which it was agreed between said parties substantially as follows: (1) That Bostwick should provide and pay for all materials and pay for all the work incident to the completion of a brick storehouse and hotel building to be located upon said real estate in Jefferson City. (2) That the work to be done by Bostwick was to be done under the direction of Parmelee & Sons, architects, whose decision as to the true construction and meaning of the drawings and specification should be final; and that Bostwick should provide proper facilities at all times for the inspection of the work by the college.

(3) In the event Bostwick failed in any respect to prosecute the work with proper diligence and failed in the performance of any agreement of the contract, then the college was to be at liberty, after notice, to terminate the employment of the contractor and itself enter upon and complete the work, or to employ other persons to finish the work and provide materials. The work was to be done on or before June 1, 1916, but there was a provision by which, if the contractor was delayed by any default of the college or by unavoidable casualties, such as fire, cyclone, strike of employees, the time fixed for the completion of the work was to be extended for a period equivalent to the time lost thereby. (4) It was further provided that the sum to be paid by the college to Bostwick for work and materials should be $12,000, to be paid upon estimates of the architects as the work progressed, to the amount of sixty per cent. of the value of labor and materials furnished and labor performed payments to be made upon the 1st of each month and fir 1 payment within ten days after completion of the work. 1 this same article of the contract it is provided that if at any time there should be any evidence of lien or claim for which the college might become liable and chargeable to the contractor the college should have the right to retain out of any payment then due or thereafter to become due an amount sufficient to indemnify it against said lien, and Bostwick was to refund to the college all moneys that the college might be compelled to pay in discharging any lien made obligatory in consequence of the contractor's default. (5) The contractor was required during the progress of the work to maintain insurance on the building and to enter into a

bond in the penalty of $10,000 conditioned upon the faith-ful compliance by Bostwick with this contract, said bond to be furnished by a guaranty company and approved by the college.

The theory of the mechanic's lien claimants is that the making of this contract by Carson-Newman College with Bostwick and its .execution and substantial com-pliance therewith is evidence of the fact that the building was really being constructed for the use and benefit of the college, and that Bostwick was the mere agent of the college in making the improvements upon the lots, and that therefore the deed of trust in favor of the college, although recorded in the register's office of the county prior to the time the materials were furnished, does not afford to the college a lien prior to that given to them by the statute. In support of this contention they rely upon the decision of this court in the case of *Ragon* v. *Howard,* 97 Tenn., 334, 37 S. W., 136; *Lee* v. *Gibson,* 104 Tenn., 698, 58 S. W., 330.

*Ragon* v. *Howard,* 97 Tenn., 334, 37 S. W., 136, was a proceeding to have declared and enforced a mechanic's lien on a block of buildings in favor of the complainant Ragon. The buildings were erected for the defendant Howard upon property contracted for by Howard with the Cincinnati Investment Company, both Howard and the investment company being made defendants. Howard undertook construction of these buildings under a contract with the investment company, which is set forth in a communication addressed to him by the secre-tary of the investment company in the following language:

"Dear Sir: Referring to the several conversations we have had concerning the sale to you of the property on Whiteside street, which is eighty-seven feet more or less, same depth as your lot, to you for $8,500, payable in five years, interest at six per cent. per annum, payable semiannually, and, should you purchase the property, we will agree to loan you $5,500 on a building to be erected on the same property, the value of which shall not be less than $10,000, the money to be paid you when the building is completed and its value certified by a competent person whom we may name, you to pay the expense of such examination and report. This $5,500 is not to be paid, however, until thirty days after the building is completed, and satisfactory proof is given that there are no mechanics' liens or prior mortgages to that which will be given to us to secure the payment of the loan. Please advise us of your final acceptance of this proposition.

ADOLPH S. OCHS, Sec'y."

Howard went into possession of the lot under the foregoing paper and commenced the erection of the building on it and another lot which he had purchased from a man named Dickey. The complainant did work and furnished material to be used in the construction of the building. The investment company advanced part of the money during the period of construction and after its completion paid the balance. Thereafter, on November 12, 1892, the company executed a deed to Howard for the lot reciting the consideration of $14,000, and Howard executed a deed of trust to a trustee to secure the consideration price. The deed to Howard and

the deed of trust from him were registered on No-
vember 21, 1892. The investment company had no notice
from the complainant of any lien as prescribed by the
statute. In disposing of this case the court said:

"It is insisted that there was no fraud in the con-
tract, and the mechanics and furnishers were bound to
take notice that Howard, though in possession, was not
owner, and it was their duty to inquire into and ascertain
his interest, and they have no claim or lien against the
investment company, and could get none on the lot
except by giving the notice provided by the act of 1889
to be given to the owner of the property, and, having
failed to give such notice, the investment company was
at liberty to secure itself, according to its contract with
Howard, for its purchase money and money advanced,
by making the deed to Howard and taking the deed of
trust back, as it did. The contention, narrowed down
to its ultimate basis, is that the investment company was
the owner of the property in the sense of the statute,
and entitled to the notice, and, not having been given
any notice, held the property free of liens of mechanics
and materialmen. It is evident that if the act of 1889
applies to this case, and that the investment company was
the owner of the property in the sense in which the term
'owner' is used in that statute, then complainants cannot
succeed, as no notice is claimed to have been given. It
is, and has been, the policy of our law to protect and
enforce this lien of mechanics and furnishers, and not to
allow them to be defeated by any technical niceties of con-
struction. *Burr* v. *Graves,* 4 Lea, 552; *Cole Mfg. Co.*
v. *Falls,* 90 Tenn., 466. At the same time, it cannot

be held that the lien will be protected when there is an entire want of diligence and care to ascertain the true state of the title to the prejudice of the real owner.

"In this case it is evident that the legal title to the property in controversy was not in Howard, but in the investment company, and an examination in the proper office would have disclosed this fact. At the same time, it is plain that the investment company allowed Howard to take possession of the lot and treat it as his own, and that its contract clearly contemplated that Howard should erect the buildings with the expectation and intention of putting the legal title in him when the buildings were completed, and it is also evident that it expected and stipulated to be released from all liability for liens of mechanics and furnishers, and believed it had done so by the terms of its contract with Howard. The complainants, however, had no knowledge of this agreement between the company and Howard, and, seeing the latter in possession and dealing with it as his own, took it for granted that he was the owner. Under these circumstances, have they liens on the property in controversy? The exact question here presented has not been decided in Tennessee."

After referring to and discussing a number of cases from other States holding that the purchaser of property under executory contract is to be treated either as the owner or agent of the owner of the property, and therefore in a situation to bind the property for a mechanic's lien, the court continued:

"We are aware that there are many cases in real or apparent conflict with the holding in these cases (Phillips

on Mechanics' Liens, section 70), but we consider the cases above cited as most in accord with the provisions and spirit of our own statute and decisions. We think it evident that the Act of 1889, chapter 103, was not intended to apply to this class of cases, but was intended to apply to cases where the owner of the property has employed a mechanic to construct a home upon his land for himself, and such mechanic has employed a subcontractor or bought materials. If the sub-contractor or materialman desire to hold the owner therefor, as well as the original contractor, he shall give the thirty days' notice therein provided to the owner of the property or lose his lien as against such owner. In this case, Howard cannot be treated as a contractor for building the home on the property of the investment company, as owner, but must be considered as the owner himself, whose title had not yet been perfected, but which it is agreed may be perfected. If Howard can be considered as anything else than the owner, and a contractor for himself, he would more properly stand in the light of an agent for the company to have the buildings erected, in which event the complainants' right to a lien would be apparent and clear as against the company. *Alley & Bush* v. *Lanier et al.,* 1 Cold., 540.

"We are of opinion, therefore, that complainants were not, under the facts of this case, required to give the notice prescribed by the Act of 1889, but they had a right to have their liens upon the property without such notice, if there were nothing else in the case."

In *Lee* v. *Gibson,* 104 Tenn., 698, 58 S. W., 330, the statement of facts is somewhat meager, and therefore

less helpful in applying the principles of that case to the
case at bar.   The bill was filed to enforce a mechanic's
lien on a lot and improvements on it near the city of
Memphis made for one Gibson, who purchased the prop-
erty from one Bailey and took a deed.   Whether this
deed contained reservation of a lien for the purchase
money does not appear, but the deed contained the follow-
ing clause:

"One of the inducements for the sale and conveyance
of this lot by said J. A. Bailey to said Gibson is that said
Gibson has agreed with said Bailey to improve the same
with a two-story, stone-veneered dwelling house, with
eight rooms, according to plans and specifications pre-
pared by said Gibson, and this day submitted to said
Bailey, and has further agreed to inclose the lot with a
neat and substantial fence, and to erect and construct
all necessary outhouses, cistern, and walks upon the lot,
the entire improvements to cost not less than $2,500, and
to be completed in eight months from this date.

"Now, to assist said Gibson to make these improve-
ments, said Joseph A. Bailey agrees to lend him the
sum of $1,191.51, to be paid over thus: $397.17 when the
walls, roof, and plastering are completed, and receipted
bills for all labor and material are produced showing the
property to be free from lien.   The rest of the money
is to be paid out as follows:   $397.17 when the doors and
windows are in place, and the inside finish of the whole
building is on.   The remaining $397.17 thirty-five days
after the completion of the entire work, provided the
property is then free from all liens other than that for
Bailey's benefit."

Before the registration of this deed, Gibson began the erection of the house as he was obligated to, and continued it until he died the following August. During the progress of the work the complainants who were asserting mechanics' liens under contracts made with Gibson, furnished material for and bestowed labor upon its construction, and said the court:

"The object of the present bill is to enforce these liens against the property, as superior to those of the vendor. Are they superior? We think they are.

"Having vested title in Gibson and placed him in possession of the lot under a contract to build this house, according to plans and specifications, and at a price approved by the vendor, upon what equitable principle can the latter now decline to recognize the claims of the laborers and materialmen, who aided this vendee in his effort to comply with his contract? Bailey, when he imposed this obligation, as a matter of law, was bound to know that if in the erection of the contemplated improvements Gibson failed to pay these parties, liens in their favor would arise, which might be enforced against the property. That he anticipated this contingency is apparent from the face of the instrument, in which he undertakes to protect himself against loss by such liens by a provision which empowered him to withhold the last installment of the sum he agreed to lend until the statutory period for fixing liens had been passed. Now, as to the parties who furnished materials for and did labor upon this house upon the authority of this contract, we can conceive of no rule of equity which can be invoked by Bailey to repel them.

"The case is covered by that of *Ragan* v. *Howard*, 97 Tenn., 334. Whether the work was done and materials were furnished before or after the registration of the deed is immaterial, as it is clear that the liability on these accounts was incurred by Gibson after his contract with Bailey."

If there were no other facts from which to judge of the relationship between Bostwick and wife and Carson-Newman College as above stated, there would be at least plausible grounds for the contention made by the materialmen for priority of lien; but there are other facts connected with the transaction which must be considered before any correct determination of the question can be reached. It will have been observed that in the cases relied upon, the court was not dealing with the question of priority of lien, but with the question of whether or not the mechanics and furnishers of material had any lien at all against the property in view of the fact that the legal title as appeared from the records was not in the person with whom they had the contract. If the deed of trust taken to secure Carson-Newman College was but a device and means by which the college was having this building erected for its own benefit, the case would more nearly present the situation involved in the cases relied upon.

The true relationship between the college and Bostwick may be determined by consideration of the following facts which are undisputed in this record.

Carson-Newman College is a domestic corporation conducting an institution of learning at Jefferson City. At the time of the beginning of the transactions relating

to this controversy, it had property and moneys from the income of which it paid its operating expenses. Among other properties which it owned was a lot fronting seventy-five feet and running back one hundred and fifty feet on Main or Depot street in Jefferson City upon which there was some kind of structure. Adjoining this lot of the college was another vacant lot fronting fifty feet on this Main or Depot street, which belonged to Maryville College. W. H. Bostwick, who with his wife lived in Jefferson City and who was an experienced contractor, conceived the idea of purchasing these two lots and constructing thereon a building to be used for hotel and other business house purposes. Said Bostwick, not having sufficient funds available for the purpose, applied to the trustees of Carson-Newman College to finance the proposition. This resulted in a meeting between Mr. Bostwick and the trustees of the college in December, 1915, at which time an agreement was entered into, the provisions of which were reduced to writing; but the writing containing the provisions of the agreement was not signed and executed by the parties. It was, however, agreed between them substantially as follows:

(1) That Bostwick should purchase from the Carson-Newman College its said lot on Depot street, or Main street, in Jefferson City known as the hotel property, for which he was to pay $4,000. Bostwick also agreed to purchase from Maryville College the adjoining lot fronting fifty feet on said street so that the two lots together would have a frontage of one hundred and twenty-five feet on Main street. (2) Bostwick agreed that upon acquiring this property he would erect thereon a hotel and

145 Tenn.—3

storehouse, furnishing and paying for all labor and materials. He was to construct such a building as would not cost less than $21,500 for the building alone, exclusive of the cost of the lots and exclusive of any profit to him. The building was to be constructed in accordance with plans and specifications which Mr. Bostwick produced and which were approved by the trustees. (3) It was agreed that the college would loan to Bostwick $16,000 at six per cent. interest payable semiannually, $3,000 of which was to be paid in installments of $750 each in six, twelve, eighteen, and twenty-four months after June 1, 1916, and $13,000 in five years after date of the contract. (4) It was mutually agreed that the money was to be paid on the first day of each month after the work commenced and at the rate of sixty per cent. on monthly estimates of the work until the sum of $12,000 had been advanced, which with the $4,000, which Bostwick was to pay for the lot would make up the total sum of $16,000, for which Bostwick was to execute notes as aforesaid.. (5) It was also agreed that the college should have a representative present during the progress of the work to inspect it. (6) Bostwick agreed to execute a bond in the sum of $10,000 to indemnify the college for the faithful performance by him of the contract and against any unpaid labor or material or furnishers' liens.

After this agreement had been reached, Mr. Bostwick, in accordance therewith, purchased from Maryville College the adjoining lot fronting fifty feet taking title thereto in the name of his wife, Mrs. Margaret M. Bostwick. When the parties again met to execute the agreement, it developed in the conversation that Mr. Bostwick would be

unable to procure a guaranty company to sign his bond for the performance of the contract as it had been drawn at the meeting in December, and that in order for him to make bond it would be necessary for him to enter into the standard form of builders' contract. It also developed that Bostwick had taken title to the Maryville College lot. in the name of his wife and that he wanted the deed to the Carson-Newman lot to be made to his wife. There is some controversy in the record as to the motive for having the title taken in the name of his wife, but whether this was done because Mrs. Bostwick bought the lot from Maryville College and was purchasing the other lot, or whether it was done in order to protect Bostwick against any embarrassment growing out of his indebtedness, is immaterial. So far as the question presented here is concerned, we consider that Bostwick and his wife are each bound by the conduct of the other. So it was that, in view of these facts, the form of carrying out the contract as outlined at the conference was carried out in the following method: The trustees of Carson-Newman College executed a deed to Mrs. Bostwick for the lot which it owned and took from Bostwick and wife notes aggregating $16,000 and payable as hereinbefore stated; $4,000 of these notes representing the purchase price of the lot and $12,000 representing the money which the college was to loan to Bostwick or to be advanced to pay for the work and material which was to go into the construction of the building. At the same time Bostwick and his wife executed the deed of trust to Ben A. Morton, trustee, to which we have heretofore referred, conveying to him as security for the notes not only the Carson-Newman Col-

lege lot, but also the lot which Bostwick had purchased from Maryville College and containing provisions which we have already mentioned.

Thereupon, Bostwick and Carson-Newman College entered into the building contract heretofore outlined, upon which the defendants mainly rely as giving them a mechanic's lien prior to the mortgage of the college. A guaranty bond of $10,000 was also furnished.

While the deed of trust executed to Ben A. Morton bears date of February 8, 1916, and the building contract bears date of February 1, 1916, as a matter of fact, the building contract was not delivered and executed until after the deed of trust had been executed and delivered.

After the execution of these documents, the construction of the building began, and, while it was not completed within the time specified, it was finally completed; the defendants to the petition *for certiorari* having in the meantime, and after the registration of the deed of trust to Ben A. Morton, furnished material which went into the building to the amount and to the extent shown by the decree of the chancellor, with respect to which there is no question now being raised.

The college during the progress of the work had the architects, Parmelee & Son, representing them in the inspection of the building and in making assessments as the work progressed, upon which the money was paid to Bostwick as provided by the contract.

The court of civil appeals in its opinion was not satisfied that the full amount of $12,000, which the college had agreed to pay, had been in fact advanced. But the proof clearly and convincingly shows that the college did pay

to Bostwick and for Bostwick's account the full amount of $12,000, which it had agreed to advance, part of which was paid directly to Bostwick, other parts of which were paid to parties who had furnished materials.

It is shown that neither the college nor any of its representatives had any notice or knowledge that any material at all had been furnished by the defendants now asserting a mechanic's lien, or that they had any claim against Bostwick or the building until after it had paid out the entire amount which it had agreed to advance.

While it does appear that none of the material furnished by the mechanic's lien claimants was furnished prior to the registration of the deed of trust in the register's office, it does not appear what amount, if any, had been advanced to the contractor by the college prior to the time the materials were furnished by these mechanic's lien claimants. We regard this as wholly immaterial, because whether the college had actually advanced the money or not, they were under obligation to do so, and therefore the rights of the parties are to be determined without reference to whether they had advanced the money before or whether it was advanced after the materials were furnished.

The foregoing are all of the substantial facts upon which we are to determine whether the mechanics' liens are prior or subsequent to the lien asserted under the mortgage or deed of trust by Carson-Newman College.

These facts show that the building contract was entered into and carried out as a convenient method of completing the original agreement, which was that Bostwick and wife should execute a deed of trust not only upon the

property which the college had conveyed to them, but upon other property which they owned to secure the purchase price of the lot which the college sold to Bostwick, and the money which they agreed to loan him to enable him to construct the building. The building was not being constructed for the college, nor for their use and benefit. The college was simply loaning Bostwick the money and taking a mortgage on the property to secure the same.

Without a doubt the defendants who furnished the materials which went into this building under contract with William H. Bostwick are entitled to a mechanic's lien upon the property described in this case as against W. H. Bostwick and his wife. No question is raised and none can be that these materialmen complied with all the provisions of our statute to entitle them to this lien. Some question has been raised in the course of the proceedings by Mrs. Bostwick that she was not bound by this lien because she was the real owner of the property and had no contractual relationship with the parties furnishing the material and no notice of their claims, but that is not an issue in this court. Her contention could not well be maintained if it was, for the record demonstrates that she either held the property for the benefit of her husband or her husband acted as her agent in all these matters.

Neither is there any doubt but that the petitioner Carson-Newman College has a lien upon this property as against Bostwick and wife by virtue of the deed of trust executed by them for the purpose of securing the purchase price of the lots, as well as the money advanced to them for expenditure in the construction of the building.

It is as well established as it is in accord with good sense that a mechanic's lien is subordinate to that of a mortgagee, if the lien of the mortgee is of record prior to the time the mechanic's lien attaches. A mechanic's lien only attaches upon the date the work is performed or material furnished. This superiority of the lien of the mortgagee is recognized in the very statute which affords the mechanic's lien.

Section 1981 of the Code (Shannon's section 3531), creating this lien, provides:

"There shall be a lien upon any lot of ground or tract of land upon which a house has been constructed, built, or repaired, or fixtures or machinery furnished or erected, or improvements made, by special contract with the owner or his agent, in favor of the mechanic or undertaker, founder or machinist, who does the work or any part of the work, or furnishes the materials or any part of the materials, or puts thereon any fixtures, machinery, or material, either of wood or metal, and in favor of all persons who do any portion of the work or furnish any portion of the material for the building contemplated in this section."

Section 1982 (Shannon's section 3536) is as follows:

"If the contract be made with the mortgagor, and the mortgagee has written notice of the same, before the work is begun or materials furnished, and consent thereto, the lien shall have priority over the mortgage; and if he fail to object within ten days after receipt of the notice, his consent shall be implied."

Section 1983 (Shannon's, section 3537) provides:

"The same rule shall operate upon the vendor's lien, when he has conveyed, expressly reserving a lien, or has only executed a title bond."

Thus, it will be seen that the legislature in the enactment of the law recognized the superiority of a mortgage lien over a mechanic's lien by providing that mechanics' liens shall only have priority over the mortgage lien when the mortgagee has written notice of the contract with the mortgagor; before the work is begun and the materials furnished and consents thereto. This has been the recognized rule in all of our decisions, some of which we will take occasion to notice.

*Reid* v. *The Bank of Tennessee*, 1 Sneed, 262. The Bank of Tennessee was a creditor of one Hommedieu for $20,000. It held a mortgage on a lot of land on which was erected a flour mill and distillery. The estate of Hommedieu was being administered in the chancery court as an insolvent estate. The bank set up its lien therein and sought to have the land subjected to the payment of its debts. One Huff intervened, claiming to be a creditor for brickwork done by him as a mechanic on the building constructed on said land. Huff claimed that his lien was entitled to priority over the mortgage under the Mechanic's Lien Law. The court, in dealing with this question and calling to mind the provision of the law giving to mechanics a lien upon land for work done and materials furnished at the instance of the owner in building or repairing any house or fixture thereon, said:

"Now, the mortgagor, it is true, is the real owner of the land in equity, and if he employ mechanics to

make improvements upon it they acquire a lien thereon for payment. For the mortgagee is considered as a creditor, not owner; and the only interest he has in the land consists in a lien or security for the payment of his debt. It is a mere chattel interest . . .

"The case then results in this: That the repairs were made at the request of the mortgagor, and upon his credit. The mechanic was also entitled to a lien on the mortgagor's interest in the land as a security for payment. But as there was a prior lien of which the mechanic had notice, and as the interest of the mortgagor is subject to that lien, the mechanic could acquire no greater or higher interest by his contract with the mortgagor than that which the mortgagor possessed. The mechanic knew, or might have known, of the existence of the prior lien, and has no cause to complain that it is entitled to a priority of payment. Under a different rule, it would be in the power of the mortgagor to destroy the security by erecting costly improvements, the expense of which the estate improved would not be able to pay.

"We are of opinion that the mortgagee is entitled to priority of payment over the lien of the mechanic for work done and materials furnished, after notice of the existence of the prior lien. The registry of the mortgage is such notice."

*Pride & Barnes* v. *Viles,* 3 Sneed, 125.

This case was an action of ejectment and was a contest between the purchaser of the land under a mortgage sale and the purchaser under a sale made for the enforcement

of a mechanic's lien; both parties claiming title under one Barnhill. He had conveyed the property in trust to secure Cox & Bro. in the payment of certain debts which he owed them and this deed of trust was regularly registered. After registration of the deed the plaintiffs did certain work or labor on the house as mechanics at the instance and on the credit of Barnhill. The court, in deciding the case in favor of the purchaser under the mortgage, said:

"The court further charged that, 'If they were satisfied, from the proof in this case, that Barnhill acted as the agent of Cox, in employing the plaintiffs to perform the work, then the plaintiffs should have resorted to their remedy against Cox, to enforce their lien, and not against Barnhill, and, in no aspect of the case, could a proceeding against Barnhill, to enforce their lien, under the act of 1846, prejudice the right of Cox to enforce his lien under the deed of trust.' In this charge there is no error.

"The last part of the charge is clearly correct; for, if the work was done for Cox, they having been employed by Barnhill as his agent, Cox was their debtor, and they had a right of action against him, and him only, for the value of their work. But having proceeded against Barnhill, and procured the property to be sold as his, and become the purchasers themselves, the most favorable attitude they can assume—and we will not stop to inquire if they could successfully assume that—is that by their purchase they are substituted to Barnhill's rights; and it is clear, if Barnhill were the plaintiff in this cause, he could not succeed against his vendee.

''The question raised on the first portion of the charge has been recently decided by this court, in the case of *Reid* v. *The Bank of Tennessee et al.*, 1 Sneed, 273. In that case, the identical question here presented was decided, in which opinion the court say: 'We are of opinion that the mortgagee is entitled to priority of payment over the lien of the mechanic for work done and materials furnished, after notice of the existence of the prior lien. The registry of the mortgage is such notice.' ''

*McGhee* v. *Edwards*, 87 Tenn., 506, 11 S. W., 316, 3 L. R. A., 654. The question in that case was whether the statutory lien of a livery stable keeper took precedence over a mortgage duly registered before the feeding of the horse for which the lien was claimed. In discussing the strength of the lien given to the livery stable keeper by the statute, it was pointed out by the court that the statute was in effect an extension of the common-law rule which gave a lien to an innkeeper, but that the statute must be considered in connection with the registration laws which were unknown to the common law. The court quoted with approval from Jones on Liens:

''Mr. Jones, in his late work on Liens, with the adjudged cases on both sides of the question before him, says: 'A chattel mortgage upon a horse is superior to a subsequent lien of a livery stable keeper where the horse is placed in the stable by the mortgagor, after the making of the mortgage, without the knowledge of the mortga-

gee,' citing therefor *Jackson* v. *Kosseal,* 30 Hun, 231; *Bissell* v. *Pearce,* 28 N. Y., 252; *Charles* v. *Neigelson,* 15 Bradw. (Ill.), 17; *Sargeant v. Usher,* 55 N. H. 287; *State Bank* v. *Lowe* (Neb.), 33 N. W. Rep., 482.

"The learned author adds: 'It is not to be supposed that a statute giving a lien for the keeping of animals was intended to violate fundamental rights of property by enabling the possessor to create a lien without the consent of the mortgagee, when the person in possession could confer no rights as against the mortgagee by a sale of the animals. The keeper of animals intrusted to him by the mortgagor undoubtedly acquires a lien as against the mortgagor, but it is a lien only upon such interest in them as the mortgagor had at the time, and not a lien as against the mortgagee, between whom and the keeper of the animals there is no privity of contract. The mortgagor, though in possession, is in no sense the mortgagee's agent, nor does he sustain to the mortgagee any relations which authorize him to contract any liability on his behalf. The statute cannot be construed to authorize the mortgagor to subject the mortgagee's interest to a lien without his knowledge or consent, as security for a liability of the mortgagor, unless such a construction clearly appears from the language of the statute to be unavoidable.

"As stated in the outset, authorities are to be found holding a contrary view. See *Case* v. *Allen,* 21 Kan., 217-220; *Smith* v. *Stevens,* 36 Minn., 303, which were cases where an agister's lien was held superior to an older registered mortgage. But their reasoning does not

commend them to us sufficiently to shake our conviction that the other view is the sounder and better.

"Nor do we think that the rule which prevails with reference to railroad mortgages, that claims for fuel, rails, cross-ties, labor, and repairs take precedence over such mortgage, furnishes any analogy to the case at bar. They rest upon the principle or presumption of implied agency in the company to contract such liabilities, and discharge them out of the earnings of the mortgaged property, as contemplated by the mortgagee, and necessary to the operation and preservation of the property.

"We do not mean to say that an implied agency might not arise out of the terms upon which the mortgagor was left in possession which would authorize the mortgagor to contract with the stable keeper a lien that would in the particular case, be superior to the claim of the mortgagee, which seems to have been the case in *Hammonds* v. *Danielson,* 126 Mass., 294.

"But we see nothing in the agreed statement of facts in the case at bar that creates such an agency, and in the absence of such an agency, or some other authorization or recognition by the mortgagee, we hold his claim superior to that of the stable keeper, contracted with the mortgagor subsequent to the registration of the mortgagee."

*Leming* v. *Stephens,* 95 Tenn., 444, 32 S. W., 961. Leming brought this suit for the enforcement of a mechanic's lien for certain labor performed and materials furnished to the defendant Stephens in the erection of a house. The lot upon which the house was erected had

been purchased by Stephens from Windslow, who reserved a lien for the balance of purchase money. The Harriman Building & Loan Association had advanced money for the building of the house, and took a deed of trust on the lot and improvements. The lot being insufficient to satisfy all these incumbrances, a controversy arose over priorities. The chancellor held that Leming, who had furnished material, held a first lien and a lien superior to that of the building and loan association. The vendor, in order to enable Stephens to borrow the money, had waived his lien in favor of the loan company. It appeared, however, that Leming, who furnished the material, knew that the money which Stephens had borrowed from the loan company was to be used in the construction of the house and that part of it was to be paid to him. The court said:

"We think it clear that the building association was entitled to be subrogated to the lien of the vendor, and, as the lien of the vendor takes precedence of the statute lien of the mechanic-furnisher, complainant has no ground to complain. It should be observed that the building association is, by the decree of the Chancery Court of Appeals, subrogated to the lien of the vendor only to the extent of the unpaid purchase money, amounting to $581.03, while the whole amount due the building association was $828."

*Electric Light Co.* v. *Gas Co.,* 99 Tenn. 371, 42 S. W., 19. In April, 1891, the Bartlett, Hayward Iron Works contracted to furnish and erect for the Bristol Gas Company, as part of its plan at Bristol, certain machinery. This machinery was furnished and erected according to

contract.   There was a controversy between the iron works and the holders of first mortgage bonds secured by mortgage executed on the 4th of August, 1891.   It was contended that this machinery was delivered· and put up after the execution of the mortgage, and therefore that no lien was acquired against the holder of the mortgage bonds.

The court found as a fact that delivery of this machinery was begun and the lien created prior to the registration of the mortgage, and for this. reason it was held that the iron works had a prior lien over the holders of the mortgage bonds, although the erection of the machinery was not in fact 'completed until after the mortgage had been recorded.

In discussing the question of priority between the registered mortgage and the mechanic's lien, the court said:

"A mortgagee, in a registered mortgage, is entitled to priority over the lien of a mechanic who furnishes materials and does work upon the mortgaged property at the instance of the mortgagor (*Reid* v. *Bank,* 1 Sneed, 262; *Pride* v. *Viles,* 3 Sneed, 125), unless the mortgagee has written notice of the same before the materials are furnished or the work begun, and consent thereto, or fails to object within ten days after the receipt of the notice, in which case the lien of the mechanic will have priority over the mortgage.   Code, section 1892; M. & V., section 2742; Shann. 3536.

"The mechanic's lien begins when delivery of the materials begins (*Green* v. *Williams,* 92 Tenn., 224), and not when the contract is made, or the materials put in condition for delivery."

*New Memphis Gaslight Co. Cases,* 105 Tenn., 268, 60
S. W., 206, 80 Am. St. Rep., 880. The Memphis Gaslight
Company on April 1, 1873, executed a trust deed con-
veying all of its property to trustees to secure the pay-
ment of $240,000 worth of bonds. Later on, and on June
30, 1892, the company issued $400,000 worth of bonds
secured by mortgage on all the property of the company,
but only $160,000 of these bonds were immediately is-
sued under and by virtue of the action taken on June
30, 1892. Only a few of these bonds were sold, the bal-
ance being hypothecated as collateral security to pro-
tect certain indorsers upon notes of the company. There
arose a question of priority between holders of these
bonds and certain claimants for mechanic's liens, with
respect to which the court said:

"This disposes of the main contentions raised by the
Rawlings bill, but more or less cognate to all the bills.
There remains, however, of the consolidated causes the
mechanics' liens cases, and the only distinct question
presented by them is: Are their liens superior to the
rights of the purchasers under the mortgage? The con-
tract of the LaClede Fire Brick Company antedated the
mortgage, but no material was delivered until after the
registration of the mortgage. The rule is, the title of
the purchaser relates back to the time the mortgage be-
came effectual (*Baxter* v. *Washburn,* supra; 5 Thomp.
Corp., sections 6257, 6258), while the lien of the mate-
rialman begins when his first material is placed on the
property, on which the lien is asserted (*Electric Light
Co.* v. *Gas Co.,* 99 Tenn., 387; *Green* v. *Williams,* 92
Tenn., 224).

"The contract of the Christopher Simpson Architectural Works was made and the materials furnished after the registration of the mortgage. In both cases the contract was made with the mortgagor, and no notice of it was given to the mortgagee.

"After a careful examination of these voluminous records, we are satisfied the chancellor reached a right conclusion in the dismissal of these bills."

*Reed* v. *Estes,* 113 Tenn., 200, 80 S. W., 1086. In this case the owner of the property, Mrs. Estes, had leased it to Mallalieu & True for a term of years. The complainant made certain improvements upon this property and claimed a mechanic's lien against Mrs. Estes. He had no contract with her or her agent to make the improvements, but his contract was solely with the lessees. However, the improvements were made under an agreement between her and her lessees, allowing him to make the improvements, she agreeing to contribute $1,000 toward the cost of said improvements. It was said that the statute creating a lien in favor of the mechanics did not apply in that case, because the lien is by the statute confined to cases where the contractor making the improvements has a contract with the owner of the property upon which the improvements are made. The court said:

"The facts of this case do not bring it within this statute. Complainant did not contract with the owner or her agent. By his contract with the lessee he did not become the creditor of Mrs. Estes, or acquire any lien upon her property. A lessee cannot, without special authority to

145 Tenn.—4

do so, create an indebtedness against the lessor or incumber his property for improvements. The bill must fail to this extent.''

The foregoing are the principal cases in Tennessee in which it has been held that the lien under a registered mortgage is superior to that created by statute in favor of mechanics or persons furnishing material.

*Gillespie* v. *Bradford,* 7 Yerg., 168, 27 Am. Dec., 494. On December 24, 1830, Bradford sold to Raines two lots in Winchester and took Raines' notes for the purchase money. He executed to Raines a title bond covenanting to make the conveyance when the consideration money was paid. Raines employed Gillespie, a bricklayer and plasterer, to build for him a house on one of the lots, which Raines did. Raines failing to pay, Gillespie filed the bill in this case to enforce a mechanic's lien, and making Bradford, who held legal title, and Raines, who had purchased under title bond, both defendants. Disposing of the question as presented, the court said:

''If a contract has been entered into for the sale and purchase of land, by competent parties, and is in its nature and the circumstances of it unobjectionable, it is as much in the course of the court to enforce it, as it is to give damages at law. 9 Ves., 608; 1 Mad., 287. Long before Gillespie built for Raines, Bradford's lien existed. This lien he had a right to enforce by bill, causing the premises to be sold for the unpaid purchase money, regardless of appreciation, or depreciation, of value at the date of sale. This is the established doctrine and practice in equity in this State. Nor is a case recollected, since the English Court of Chancery first assumed

jurisdiction, by bill and subpœna, to enforce contracts for the sale of land *in specie,* where the vendor was deprived of his legal title without having received the purchase money. Here Gillespie comes in on Raines equity, and asks a specific decree on behalf of the vendee, to which the vendor submits, on being paid the price of the land, and until which is done, by the terms of the contract, as well as the settled law of the court, the contract cannot be enforced. 3 Atkins, 188. Has the legislature altered the law? Was it intended to put it into the power of an extravagant vendee to erect improvements on the land, that would cost more than it was worth thus improved, and give the builder a lien for the improvements superior to that of the vendor, and destructive to his older equity? If so, the statute must be most explicit to this effect.

"The statute of 1825 makes the substantive provision on the subject. It provides that, hereafter, when mechanics construct buildings upon any lot of ground in any town by special contract with the owners thereof, they shall have and possess a lien upon each building and the lot of ground thereto attached, not exceeding one acre, for the just value of his labor, and materials furnished by such mechanic for constructing such house or houses; and the owner of such ground shall not be able to convey the same free from the said lien created by this act, nor shall the same be sold by legal process so as to avoid said lien, unless judgment is rendered before such building was commenced.

"By the second section, the lien is to continue one year after the building is completed, and until after the ter-

mination of any suit that may be brought to establish the purchaser's claim. This act only extended to cases where one person undertook the whole building. The act of 1829 amends that of 1825, and extends the lien separately to each person who may do part of the work or furnish part of the materials. This statute seems too plain for serious doubt to arise on its construction. Yet such doubts have arisen, and the chancellor's decree has been appealed from, and the determination of this court required. We think the statute has reference to the existing title of him who has the building erected, such as it was when the improvement commenced. The mechanic's lien will hold good against a subsequent purchaser from the person who builds, and against a lien by a subsequent judgment against him, but has no reference to previous liens for purchase money unpaid by mortgage or judgment. The decree will be affirmed with costs.''

The distinction between the case at bar and the situation in which the principle invoked by the materialmen is applicable is aptly illustrated by the case of *Jonte* v. *Gill,* 39 S. W., 750. The opinion in that case was delivered by Judge NEIL of the court of chancery appeals, and it appears that the decision of that court was affirmed orally by the supreme court in 1897.

The facts of that case necessary to be stated in order to gather the principle applied are these:

On July 18, 1892, J. L. Weakley conveyed to his co-defendant, J. Y. Gill, the real estate in controversy, and two other lots, at the price of $2,850, payable in two

notes, to secure a lien which was retained in the deed. This deed was withheld from registration until March 2, 1893. There was some controversy as to the motive of Gill for withholding the deed from registration, and that fact was taken into consideration by the court in its conclusion that complainants were led to believe that Gill was having the house built for Weakley.

Weakley contended that he had a vendor's lien upon the property, by virtue of the unregistered deed, and that the rights of the materialmen should be subordinated to his demands. It was found by the court that the title to this property on the records of the county appeared to be in Weakley; that Gill led the complainants to believe that he was having the house built for Weakley and when it was completed he was to sell it, and after paying out of the proceeds the expenses of the building he was to have his profit for building, and the residue of the proceeds would go to Weakley. In addition to this, Weakley was constantly, if not daily, in and about the building while it was being constructed, and frequently gave directions how this was to be done, and sometimes had the parts of the structure torn out and other parts put in—this in the presence of complainants, or some of them. It, moreover, appeared in that case that this construction work was done under an agreement between Gill and Weakley to this effect:

"That Weakley should sell the lot to Gill on a credit, and Gill, being a contractor and engaged in building as a business, would cause to be erected a building on the lot, according to the original plan of the architect; and

that when the building should be completed Gill should sell it, and out of the proceeds should pay the expense of building, and the purchase money; and that whatever residuum might be left would belong to Gill as his profit.''

The court, in holding that the mechanic's lien was prior and superior to that of Weakley, said:

"It should be stated that the deed executed by J. L. Weakley to J. Y. Gill, in addition to the lot now in controversy, conveyed two other lots, which were covered by the consideration set out in that deed. The purpose to be subserved by these two other lots, in carrying out the arrangements above stated, was that they might be used by Mr. Gill in procuring material. The able plan thus conceived was designed to protect Mr. Weakley in the following manner, viz.: All of the lots had upon them the vendor's lien mentioned in the deed. If the two lots, other than that now in controversy, should be used in procuring material to be placed upon the lot in controversy, their value would still remain under the lien by virtue of being fixed to that lot itself. Then, these lots, and the labor and skill of Mr. Gill, and the mechanics and other persons furnishing labor and material, being embodied in the form of the building upon the lot in controversy, would greatly enhance its value and all fall under the lien. This lot so enhanced would then be marketable at a figure far in advance, as it was believed, of the purchase money for all three of the lots. In this manner Mr. Weakley would be enabled to realize upon all three of his lots at one stroke, without any apparent financial risk. However, it seems that he did not suffi-

ciently reckon with the mechanic's lien law. By virtue of the arrangement entered into between him and Gill, above stated, Gill became merely Mr. Weakley's agent, and Weakley himself was, in substance and legal effect, an original party to the creation of these mechanic's lien debts. In such a case it is plain under the statute that all of the complainants would have a lien upon the property for the amount of their several debts, and the alleged vendor's lien is an immaterial consideration, so far as the rights of the complainants are concerned. By Mill & V. Code, section 2739 (Shannon's Code, section 3531), it is provided: 'There shall be a lien upon any lot of ground or tract of land upon which a house has been constructed, built, or repaired, or fixtures or machinery, furnished or erected, or improvements made, by special contract of the owner or his agent in favor of the mechanic or undertaker, founder or machinist, who does the work or any part of the work, or furnishes material, or any part of the material, or puts thereon any fixtures, machinery, or material, either of wood or metal, and in favor of all persons who do any portion of the work, or furnish any portion of the material for the building contemplated in this section.' Acts 1825, chapter 37, section 1; 1829, chapter 26, sections 1, 2; 1835, chapter 40; 1845-46, chapter 118; 1859-60, chapter 114. Within the sense and meaning of the Mechanic's Lien Law, and as to the complainants, under the facts above found, Mr. Gill was but the agent of Mr. Weakley in the making of contracts with mechanics, laboring men and materialmen, and in the erection of the improvements. It results, therefore, that the complainants had a lien under the above-mentioned section.''

It is manifest, we think, from the consideration of the foregoing authorities, that the mortgage lien of Carson-Newman College must be held prior and superior to that of the mechanic's lien, unless the latter falls within the meaning and principles of the third and last case above referred to.  This case is, of course, quite dissimilar from that of *Ragon* v. *Howard* in many important particulars.  In that case, at the time the material was furnished Howard was the owner of the property under an executory contract which was subsequently consummated upon the execution of a deed.  There was not involved any question of priority between a lien created by mortgage and a mechanic's lien created by statute.  In addition to that, Howard was allowed to take possession of the property and treat it as his own with the expectation and intention that the legal title would be completed in him when the buildings were finished.  Under those circumstances, Howard was treated as the owner of the property, and the investment company, by its conduct, was estopped to controvert the fact that Howard was acting as its agent.  The real question in that case was whether it was necessary to serve notice on the investment company under the provisions of the Act of 1889 passed for the protection of subcontractors.  The principles of that case are not applicable to the facts of the present case for the reason that Carson-Newman College recognized that Bostwick was the owner of this property and had conveyed it and other property to a trustee to secure an indebtedness due from him to the college, and this deed of trust, and lien created thereby, was in full force and effect from the date of the reg-

istration thereof, which preceded the time that any materials were furnished by the defendants to the contractor. The only way the mechanics' liens could be made prior to the mortgage is that prescribed by statute, which requires written notice and consent of the mortgagee before work is begun or materials furnished in order to entitle mechanics' liens to priority.

The case at bar differs in some respects from *Lee v. Gibson*, the difference being that a deed was executed to Gibson containing a condition that the vendee was to erect and construct certain buildings, etc., upon the property. There is nothing to indicate in that case that the vendee retained title or any lien to secure the money which he had advanced to go into these buildings; but, on the contrary, it appeared that before this deed was registered, and before any notice could be brought home to mechanics or furnishers of material, the vendee began the erection of houses and continued the work of improvements in such way as to indicate that he was the real owner of the property.

The court said in that case:

"Whether the work was done and materials were furnished before or after the registration of the deed is immaterial, as it is clear that the liability on these accounts was incurred by Gibson after his contract with Bailey."

In other words, it was immaterial whether the mechanics and furnishers of material had notice of where the legal title rested, in view of the fact that the legal title did actually rest in the man who contracted for the labor and material and the conduct of the parties was such as to indicate that Bailey was the owner, and in view

·of the contract which provided that all of the money was not to be paid over until the property was free from liens.

We do not conceive from the fact that Carson-Newman College entered into a separate contract with Bostwick for the construction of the building changes the real situation of the parties. This contract was entered into merely to carry out the original agreement by which the college was to loan to Bostwick this $16,000 upon land which he owned, and upon which he was to construct a building to cost net some $5,000 more than the amount of money being loaned. The college took the precaution to protect itself by mortgage or deed of trust, which it placed of record in order that all persons dealing with Bostwick might have notice of the existence of their lien. To hold that their lien is subordinate to these mechanics' liens would be to abrogate the provisions of our registration laws passed for the very purpose of protecting prior rights by means of affording notice to all persons interested.

It is argued that the fact that this contract provided for a $10,000 indemnity bond and that such bond was given should operate to subordinate this mortgage lien. The fact that the college saw proper to take a bond to protect itself could not have the effect to destroy the priority of its lien acquired by the registration of this mortgage. It had the right to take or not to take the bond. The fact that they did or did not is of no concern to outsiders. The public records of the county afforded notice to all of the fact that they had a deed of trust upon this property from the date of its registration.

The principle distinguishing this case from those mentioned is well defined and brought out in the opinion of Mr. Justice NEIL in the case of *Jonte* v. *Gill,* above referred to. In that case there was a vendor's lien retained in the deed conveying the property; but the deed was not registered, and before its registration these mechanics' liens attached, and, in addition thereto, there was a contract between the vendor and vendee by which the building when completed should be sold, and by which the parties were to divide the proceeds thereof, thus showing that there existed the relationship of agency between the vendor and vendee, and in addition thereto conduct estopping the vendor from asserting his rights.

In other words, a lien secured by a mortgage must necessarily be prior, if the mortgage is registered, to the attachment of subsequent liens, unless the holder of the prior lien has done something to mislead, for his benefit, those dealing with his vendee to their detriment and disadvantage, and thus make room for the application of the doctrine of estoppel; or else there must exist the relationship of agency so as to make the principal bound to the contractor of materials and labor for the acts of the agent. No such relationship nor condition is shown here to exist.

The case of *Anglo-American Savings & Loan association* v. *Campbell,* decided by the Court of Appeals of the District of Columbia reported in 13 App. D. C., 581, 43 L. R. A., 622, illustrates the soundness of this conclusion. In that case David M. Lea was on March 22, 1896, the owner of vacant lots in the city of Washington. At the time these lots were conveyed to him they were subject

to vendor's lien secured by deed of trust for about
$10,000. He became indebted to his grantors for part of
his purchase money, for which he executed notes bearing
date March 8, and which were secured by deed of trust
of the same date. They were recorded March 30, 1896.
Lea purchased these lots for the purpose of improving
them, and made subdivision of them to accord to the plan
for the erection of five dwelling houses. The Anglo-
American Savings & Loan Association was a building
association, and on March 2, 1896, Lea made an applica-
tion to the association for a loan, in which he stated that
he proposed to spend some $46,500, in the construction of
houses on the lots. Subsequently, and on March 7, 1896,
there was made a formal application on a blank form pro-
vided by the association for the purpose. The associa-
tion agreed to make the loan which was to be secured up-
on the property, and as a result thereof Lea executed a
bond reciting the loan and was conditioned upon the pay-
ment of the loan by said Lea with interest, and this bond
was secured by deed of trust to a trustee, which was re-
corded, as stated. In the bond it was recited that it was
a condition precedent to the loan that Lea should execute
and deliver to the association a bond obligating him to
complete and finish the construction of the improvements
on or before a certain date, and to protect said associa-
tion from any liens or damage by reason of any liens or
claims against said land and improvements under the law
commonly known as the Mechanic's Lien Law. The
money was to be advanced as the work progressed. It was
so advanced up to the entire amount of the loan. The
mechanic's lien claimant testified in the case that he knew

of the trust deed to the association; Lea had told him of the arrangement before he began the work, and told Campbell that he would pay him for material out of the loan secured. The controversy determined by the court was between Campbell, who had a lien for material furnished, and the lien of the loan association secured by the deed of trust.

The conclusion of the court from the foregoing facts is stated in the opinion as follows:

"1. The obligatory character of the contract of the Anglo-American Savings & Loan Association with David M. Lea to advance him the full sum of $46,500, to be paid in installments at certain stages in the construction of his houses, and the record of the conveyance to its trustees to secure the same, before any contract by him let or entered into for the construction in any particular, gave that mortgage priority over all liens for labor and materials supplied to him under his subsequent contracts for construction. D. C. Comp. Stat., section 3, p. 3671; Moroney's Appeal, 24 Pa., 373; *Hoagland* v. *Lowe,* 39 Neb., 397, 407.

"2. Nor is there anything in the arrangement between Lea and his vendors and the association, contemplating a scheme for the purchase of the property, and the joint construction of the buildings thereon, that would justify the subordination of the mortgages of the former to liens of the furnishers of labor and materials, in accordance with the doctrine of such cases as *Bohn Mfg. Co.,* v. *Knounze,* 30 Neb., 719, 725, 12 L. R. A., 33, and *Henderson* v. *Connelly,* 123 Ill., 98. And that doctrine need not, therefore, be either approved or denied.

"3. Although the loan was obtained for the express purpose of erecting the houses according to plans and specifications submitted with the application therefor, there is nothing in the nature of the contract or in its terms that made it obligatory upon the association to see that the money advanced thereunder was applied to payments for labor and material furnished in the construction. Hence, payments made to Lea, after, as well as before, notice of the claims due the appellees, and the filing of their liens, were in discharge of the contract of the association and brought it under no liability to them. Moroney's Appeal, 24 Pa., 373; *Rogers* v. *Central Loan & T. Co.,* 49 Neb., 676; *Patrick Land Co.* v. *Leavenworth,* 42 Neb., 715.

"4. The right to recover the amount of money retained by the association from the last installment cannot be enforced in favor of the mechanic's lienholders by virtue of any declared trust, or one to be implied from the terms and conditions of its contracts alone. From the proposition that the association was under no obligation by virtue of its contract to see to the application of the money advanced, the conclusion necessarily follows that from the mere promise, no matter how binding, to advance Lea the full sum of $46,500, no trust was impressed upon the part thereof retained by the association, in favor of the holders of mechanics' liens any more than in favor of Lea's creditors generally."

We are therefore constrained to hold that the lien of Carson-Newman College, by virtue of its recorded mortgage, is superior to that claimed by the defendants who furnished materials.

Kingsport Brick Corp. v. Bostwick.

All other questions in this case were settled by the decree of the court of civil appeals and none of them are before this court for review. The record shows that the entire amount of this $12,000 was advanced by Carson-Newman College to Bostwick, and the balance of $16,000, secured by the deed of trust, represents the original purchase price of the land, and therefore the petitioner, Carson-Newman College, is entitled to enforce its lien for the full amount thereof with interest and attorneys' fees and the same constitutes a prior lien to the lien of the mechanics.

With the modifications indicated by this opinion, the decree of the court of civil appeals is affirmed and the cause remanded to the chancery court of Jefferson county for further proceedings not inconsistent herewith.